A94A1057. HYLTON v. AMERICAN ASSOCIATION FOR VOCATIONAL INSTRUCTIONAL MATERIALS, INC. et al.
(448 SE2d 741)

BIRDSONG, Presiding Judge.

Richard M. Hylton appeals the grant of summary judgment to the defendants, American Association for Vocational Instructional Materials, Inc., Thomas A. Silletto, James McCully, Amon Herd, Alvin Halcomb, George W. Smith, Jr., James E. Wren, Dr. Chris J. B. Smit, and the Board of Regents of the University System of Georgia. Hylton's claims against these defendants for defamation and malicious interference with contract arose from the termination of his duties as executive director of the American Association for Vocational Instructional Materials, Inc. ("AAVIM").

The record shows AAVIM is a private, non-profit corporation intended to promote agricultural and vocational education; that Silletto, McCully, and Herd were members of AAVIM's executive committee; that Halcomb was a member of AAVIM's board of directors; that Smith and Wren are AAVIM employees; that Smit was Hylton's supervisor at the University of Georgia; and that Hylton had a contract of employment with the Board of Regents.

The record further shows Hylton first was hired as an AAVIM research and development specialist and, because of AAVIM's relationship with the University of Georgia, he also had the status of associate professor in the University's Department of Extension Education. In 1986, he was appointed to the position of executive director of AAVIM and director of the National Institute of Instructional Materials ("NIIM"). NIIM is a department of the University of Georgia's College of Agriculture which the University formed to administer AAVIM. Although employees of AAVIM were listed as employees of the University, costs of salaries and benefits were reimbursed by AAVIM. Further, all non-clerical employees of AAVIM had one-year employment contracts with the University System of Georgia.

In 1990, Hylton and others, including appellees Smith and Wren, were advised that their NIIM contracts would not be renewed for the 1991-1992 school year. Then in October 1990, following a meeting of AAVIM's board of directors at which a memorandum critical of Hylton's performance as executive director circulated, the board placed Hylton on administrative leave from his position as executive director of AAVIM and relieved him of his duties with AAVIM. Subsequently, Hylton was terminated as executive director, effective June 30, 1991.

Hylton later learned the memorandum that circulated at the meeting of the board had been prepared by defendants Smith and Wren on behalf of defendants Silletto, Herd, and McCully, the members of AAVIM's executive committee. Hylton contends the memorandum was defamatory and was designed to destroy his career and his professional reputation. Hylton alleges that the memorandum stated he was dishonest, questioned his professional reputation and performance, and called for his dismissal, and also alleges that circulation of the memorandum constituted malicious interference with his contractual relationship with the University of Georgia.

The record shows that after Hylton was placed on administrative leave as director of AAVIM, defendant Smit removed Hylton as the director of NIIM. The record also shows, however, that Hylton was director of NIIM only because he was the director of AAVIM and his responsibility as director of NIIM was to serve as executive director of AAVIM. Further, the record shows that AAVIM reimbursed the University for the salary paid Hylton as director of NIIM.

The record further shows that Hylton's contract with the University was for a one-year term, and that before the meeting of AAVIM's board of directors, Hylton had been informed the University had decided that after July 1, 1991, AAVIM's employees, except for Smith and Wren, would be employees of AAVIM, and not the University. Hylton was also informed that Smith and Wren would not be renewed by the University after the 1990-1991 school year. Further, by letter dated September 28, 1990, Hylton was advised that the Univer-

sity would not renew his contract for the 1991-1992 school year.

The record further shows that Hylton's contract for the 1990-1991 school year, and his earlier contracts with the University, contained a statement that the contract constituted the entire agreement between Hylton and the Board of Regents and that the contract could not be changed or modified other than by a writing signed by the parties; the contract also contained an acknowledgment by Hylton that he would not be re-employed unless a new contract was offered by the Board of Regents and accepted by him.

The record further shows that, even though Hylton was relieved of his duties as executive director of AAVIM in October 1990, he continued to receive his full salary until his contract expired at the end of June 1991.

Subsequently, Hylton filed suit against the defendants primarily asserting interference with his employment contract and defamation. After discovery, Smit and the Board of Regents ("the University defendants") filed a motion for summary judgment and the other defendants ("the AAVIM defendants") also filed a motion for summary judgment. The trial court granted both motions.

Regarding the University defendants' motion, the trial court ruled that Hylton had not established his claim of tortious interference with contract because, in fact, there was no interference with Hylton's contract rights since his contract was honored in full and because at all times pertinent to the action defendant Smit was acting as an agent of the University and thus was not a stranger to Hylton's contract with the University. Further, to the extent Hylton asserted a claim based upon any oral promises or modification of his written contract, the trial court found that this claim was precluded by the terms of Hylton's contract with the University, the parol evidence rule, and the statute of frauds.

The trial court found that the AAVIM defendants also were entitled to summary judgment because the evidence showed there was no defamatory statement in the resolution adopted by the AAVIM board that terminated Hylton's employment, because the memorandum critical of Hylton's performance as executive director was not published within the meaning of the elements of a claim of defamation since the circulation of the memorandum was only to the members of the AAVIM executive committee and board of directors, and because the memorandum itself could not support a claim of defamation as it contained only expressions of opinion. The trial court further found that there was no interference by the AAVIM defendants with Hylton's contract with the University because his contract was honored in full and because Hylton had no legitimate contractual expectation of further employment with the University. This appeal followed. *Held*:

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

2. On the issue of Hylton's claim of tortious interference of contract, Hylton merely states the general principles of law applicable to this tort and sets forth his contentions regarding expectations for his continued employment which are different from those expressed in the contract. Hylton, however, has not shown that the lower court applied the law incorrectly or that the evidence differed from that which the trial court relied upon.

The elements of this tort are the existence of a contractual relationship, interference with the relationship by one who is a stranger to the contract, and resulting damage to the contractual relationship. See *St. Mary's Hosp. of Athens v. Radiology Prof. Corp.*, 205 Ga. App. 121, 124 (421 SE2d 731). As there is no dispute that Hylton's contract with the University was honored in full and no dispute that the University notified Hylton before the AAVIM board met that his contract would not be renewed after the 1990-1991 school year, Hylton cannot establish an essential element cause of action for tortious interference with contract. Since Hylton admits the University had decided not to offer him a contract after the 1990-1991 school year before the AAVIM board took action, the AAVIM defendants could not have interfered with his contractual relationship as a matter of law, for the contractual relationship was not damaged. *Moore v. Barge*, 210 Ga. App. 552, 556 (436 SE2d 746); *Carter v. Willowrun Condo. Assn.*, 179 Ga. App. 257, 259 (345 SE2d 924). Further, since both State defendants were not strangers to the contract, they obviously could not be liable for tortious interference. *Moore v. Barge*, supra at 554; *Lake Tightsqueeze v. Chrysler First Financial Svcs. Corp.*, 210 Ga. App. 178 (435 SE2d 486). Compare *Renden, Inc. v. Liberty Real Estate &c. Partnership*, 213 Ga. App. 333, 337 (444 SE2d 814). Moreover, since the Board of Regents had authority to end Hylton's relationship with the University, it could not be liable for interference with the contract. See *Moore v. Barge*, supra at 553. Also, while Hylton may have had a personal expectation of receiving additional contracts from the University based on oral promises allegedly made, since these promises differed from the specific written terms of his contract they have no legal significance. OCGA §§ 24-6-1; 13-5-30 (5). Therefore, since all defendants showed that there is no evidence sufficient to create a jury issue on at least one essential element of Hylton's claim of tortious interference with contract, that claim tumbles like a house of cards. *Lau's Corp. v. Haskins*, supra.

3. On his claim of defamation, Hylton correctly sets forth various general principles of law connected with the tort of defamation, but again does not address the crucial issues on which the trial court granted summary judgment, i.e., the resolution was not defamatory,

the memorandum was not published, and the memorandum expressed opinion not fact.

First, nothing in the board's resolution can be taken as defamatory. The resolution merely recites certain procedural matters and then states that because of uncertainties regarding the relationship between AAVIM, the University, and NIIM, Hylton felt he could not continue to represent AAVIM; that Hylton was placed on administrative leave with pay and was relieved of his duties with AAVIM pending resolution of the uncertainties with AAVIM, the University, and NIIM, and AAVIM asked that the University resolve those uncertainties, and then appointed an interim director. Nothing in this resolution is defamatory per se, nor can any statement be construed reasonably as defamatory by innuendo. See *Cox Enterprises v. Bakin*, 206 Ga. App. 813, 818 (426 SE2d 651); *Yandle v. Mitchell Motors*, 199 Ga. App. 211 (404 SE2d 313). Thus, while in most cases whether a statement is defamatory is a question for the jury, as this statement is not ambiguous and can reasonably have but one interpretation, the lower court properly decided the issue. *Thomason v. Times-Journal*, 190 Ga. App. 601 (379 SE2d 551).

Further, we agree with the trial court that, as a matter of law, there was no publication of the allegedly defamatory memorandum. See *Elder v. Cardoso*, 205 Ga. App. 144, 146 (421 SE2d 753); *Kurtz v. Williams*, 188 Ga. App. 14, 15 (371 SE2d 878). There is no evidence the memorandum was circulated to anyone who was not in attendance at the meeting of the AAVIM board of directors and thus would have had an official reason to receive the information. *Kurtz v. Williams*, supra. Moreover, the trial court correctly found the memorandum is an expression of opinion rather than fact. *Elder v. Cardoso*, supra at 145; *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (337 SE2d 770).

Accordingly, the trial court did not err by granting summary judgment to appellees.

*Judgment affirmed. Blackburn and Ruffin, JJ., concur.*

DECIDED SEPTEMBER 13, 1994.

*Bushnell & Lariscy, William C. Bushnell, Joseph E. Lariscy III*, for appellant.

*Michael J. Bowers, Attorney General, Dennis R. Dunn, Senior Assistant Attorney General, Rebecca S. Mick, Assistant Attorney General, Drew, Eckl & Farnham, Hall F. McKinley III, Douglas G. Smith, Jr.*, for appellees.