A96A0957. CORNER v. THE STATE.
A96A1724. AARON v. THE STATE.
(477 SE2d 593)

BEASLEY, Chief Judge.

Corner was charged on August 26, 1995, with driving under the influence of alcohol, OCGA § 40-6-391 (a) (1) and (a) (4), and Aaron was similarly charged on November 5, 1995. Both challenge the trial court's admission into evidence of the results of their Intoxilyzer 5000 breathalyzer tests on the ground that the regulations permitting the use of the machine are void. They contend the Georgia Bureau of Investigation Division of Forensic Sciences failed in 1994 to follow the Administrative Procedure Act, OCGA § 50-13-1 et seq., in amending the regulations that authorize the use of this machine by law enforcement, so that the tests are void and the test results are inadmissible as evidence against them.

OCGA § 50-13-4 (a) requires an agency to give at least 30 days' notice of its intent to amend a regulation.[1] The notice must clearly

---

[1] The State does not dispute that the GBI is an agency, OCGA § 35-3-2, and the DFS is a division of that agency, OCGA § 35-3-3, as defined in the APA, and is thus mandated to adhere to requirements of the Act in amending its rules and regulations. See OCGA § 50-13-2 (1).

identify the rule being amended and include an exact copy and a synopsis of the proposed amendment, which must indicate the purpose and the main features of the proposed amendment and the differences between the existing rule and the proposed rule. The notice must also include the date, time, and place the agency will consider the adoption of the amended rule so that interested persons may present their views. The defendants concede the notice issued by the GBI/DFS fulfilled each of these requirements.

Not in the notice was a "citation of the authority pursuant to which the rule is proposed for adoption." OCGA § 50-13-4 (a) (1). The statutory authority in this case is OCGA § 40-6-392 (a) (1), which provides that evidence of the amount of alcohol in a person's system, as determined by chemical analysis, is considered valid and admissible at trial only if the chemical analysis "shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order. . . ." Additional requirements are specified but are not in issue here. Id. The issue is whether the omission of the citation is fatal.

Defendants maintain this case is controlled by the holding in a line of cases beginning with *State v. Baker*, 146 Ga. App. 608 (247 SE2d 160) (1978), where the statutory predecessor to OCGA § 40-6-392 did not require breath analysis equipment to be approved by the state crime laboratory, but the requirement was nonetheless created by the State Department of Public Safety's own rules. Id. This Court held that because the State could not produce evidence at trial that the state crime laboratory had approved the device at issue, the court properly excluded results of the breath test.

Here, the trial court, which was the same in each of these two cases, held the breath test admissible on the ground "that the statute does not require approval of the machine itself. The statute requires that the machine be properly certified, that it have all its working parts in order. The State has met that statutory requirement. That's all the statute requires."

To the contrary, approval of the Intoxilyzer 5000 itself is required. OCGA § 40-6-392 (a) (1) states the GBI/DFS must approve the "method" of testing with a particular machine. This inherently includes the machine itself, as it is an integral part of the "method" of testing, the very instrument on which the method is employed. The method cannot be activated in a vacuum. As the State even explains in its brief, the GBI/DFS rule "enumerates the 'Intoxilyzer 5000 manufactured by CMI, Inc.' as the approved method of conducting breath tests after January 1, 1995." The GBI/DFS was required to sanction its use in accordance with the rule-making requirements of the APA,

since rule-making is the vehicle by which agencies take such type of official policy-setting action. See, e.g., *Willoughby v. State*, 153 Ga. App. 434 (265 SE2d 352) (1980).

The APA, as a statute in derogation of the common law, must be strictly construed, *Caldwell v. Corbin*, 152 Ga. App. 153, 158 (3) (262 SE2d 516) (1979), but strict construction of OCGA § 50-13-4 (a) does not render the amended rules void on account of the omission. Although we disagree with the trial court's reasoning, we nonetheless affirm its decisions. A judgment right for any reason will be affirmed on appeal. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991).

OCGA § 50-13-4 (a) provides, "[p]rior to the adoption, amendment, or repeal of any rule," an agency must comply with the rule-making procedures. Subsection (d) provides, "No rule adopted after April 3, 1978, shall be valid unless adopted in exact compliance with subsections (a) and (e) of this Code section and in substantial compliance with the remainder of this Code section." These two subsections, construed together, mean that strict compliance with respect to the citation is necessary only when a rule is being *adopted*, not when it is being amended or repealed. This makes practical sense. As in this case, there is no possibility of confusion in determining the statutory authority for an existing rule that is being repealed or amended, when that authority has been cited in the publicly accessible existing rules. Nor have defendants claimed any confusion, either with respect to their own involvement with the machine test in 1995 or with respect to the general public or interested parties when notice of the proposed amendment was given in 1994. Accordingly, GBI/DFS did substantially comply with the APA requirements in that the notice cited the regulations being amended, Rules 92-3-.02, 92-3-.03, and 92-3-.06, which cite their statutory authority, OCGA § 40-6-392.

Cases defendants cite in support of their position are distinguishable on this ground, including *Todd v. State*, 205 Ga. 363 (53 SE2d 906) (1949); *Dept. of Ed. v. Kitchens*, 193 Ga. App. 229 (387 SE2d 579) (1989); and *Outdoor Advertising Assn. &c. v. Dept. of Transp.*, 186 Ga. App. 550, 555 (5) (367 SE2d 827) (1988). In those instances there was substantial non-compliance with the requirements and substantial harm as a result. The omission in this case does not rise to the same level.

Instead, it is akin in degree to the error committed by the agency in its rule-making in *State v. Holton*, 173 Ga. App. 241 (326 SE2d 235) (1984), where the rules were inadvertently issued in the name of the agency previously responsible for enacting them. We reiterate the holding of that case as equally applicable here: "[A]lthough we do not approve of the subject state agencies' failure to fully comply with the pertinent statutory requirements . . ., we conclude that the . . .

rules have been promulgated in substantial compliance with said requirements and, thus, are valid and effective against [the defendants]." (Emphasis omitted.) Id. at 246. Likewise here, the issue-raising failure to cite the authority in the notice of proposed amendment could easily have been avoided.

Defendants argue that a proposed regulation failing to cite its statutory authority should be made especially susceptible to invalidation because of the principle of separation of powers. They point out the APA applies to situations where the legislature defers part of its decision-making authority to the executive branch through its administrative agencies. The rule-publishing requirement ensures the executive branch does not abuse or exceed this power. But as the State points out, it stretches reason to suggest that the omission in this instance, which we perceive to be imprecision due to inattention, constitutes an abuse of power.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Blackburn, Smith, Ruffin and Eldridge, JJ., concur.*

DECIDED OCTOBER 3, 1996 —
RECONSIDERATION DENIED OCTOBER 29, 1996 —

*George A. Stein, Monte K. Davis*, for appellants.
*Keith C. Martin, Solicitor*, for appellee.
*Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito, Virgil L. Brown & Associates, Bentley C. Adams III*, amici curiae.