A97A0690. CELLULAR ONE, INC. v. EMANUEL COUNTY.
A97A0691. ALLTEL MOBILE COMMUNICATIONS OF GEORGIA, INC. v. EMANUEL COUNTY.
(489 SE2d 50)

RUFFIN, Judge.

Emanuel County filed two class actions against Cellular One, Inc. and Alltel Mobile Communications of Georgia, Inc. ("defendants"). In both actions, Emanuel County alleged that the defendants were collecting local option sales taxes from their customers but were not properly reporting the collection of the taxes to the State Revenue Commissioner ("commissioner"). Emanuel County further alleged that, as a result of the improper reporting, it and other similarly situated counties were not receiving the proper amount of local tax revenues from the commissioner. In both actions Emanuel County is attempting to collect the reduced revenues and damages for loss of use of the revenues directly from the defendants.

The defendants denied liability to Emanuel County and filed motions to dismiss the complaints for failure to state a claim. The trial court denied the motions, and we granted the defendants' applications for interlocutory appeal. Because both appeals raise the identical issue, we will consider them jointly. For reasons which follow, we reverse the trial court in both cases.

"A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support

---

thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. . . . In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor." (Footnotes omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

Under this standard, we will assume, based on Emanuel County's complaint that it can prove that the defendants collected the sales taxes from their customers, that they have not properly reported and remitted the taxes to the commissioner, and that Emanuel County has been injured by its receipt of reduced tax revenues. We must now decide whether these facts establish a cause of action against the defendants to recover the alleged damages. In deciding this issue, we turn our attention to the statutory provisions which provide for the administration and collection of taxes to determine whether the legislature expressly or impliedly intended to allow this right of action. See OCGA § 1-3-1 (a).

Under Georgia law, counties which have complied with certain statutory procedures are authorized to impose local sales taxes. OCGA §§ 48-8-82; 48-8-110. The administration and collection of these local sales taxes are generally governed by OCGA §§ 48-8-87 and 48-8-113, which provide that the taxes are to be *"exclusively* administered and collected by the commissioner for the use and benefit of [the] county. . . . Such administration and collection shall be accomplished in the same manner and subject to the same applicable provisions, procedures, and penalties provided in Article 1 of this chapter. . . ." (Emphasis supplied.)

Article 1 clearly authorizes and obligates the commissioner, and no other entity, to collect the taxes. Under the administrative scheme established by Article 1, the dealer or merchant ("dealer") is required to "collect the tax imposed . . . from the purchaser or consumer and . . . pay the tax over to the commissioner as provided by law." OCGA § 48-8-33. See also OCGA § 48-8-30 (b) (1) and (f) (1) providing that the dealer is *required* to "remit the tax *to the commissioner* as provided in this article" and, when received by the commissioner, the tax shall be a credit against the tax imposed on the dealer. (Emphasis supplied.) After collecting the tax and deducting an administrative fee, the commissioner is required to distribute the remaining proceeds to the local government. OCGA §§ 48-8-89 (a); 48-8-115.

Under this scheme, the dealer collects the tax from the purchaser and pays the tax to the commissioner. OCGA § 48-8-33. Accordingly the dealer is required to file returns with the commissioner, (OCGA § 48-8-49) and maintain books, records, and other information required by the commissioner. OCGA §§ 48-8-49; 48-8-

52. If a dealer fails to file a return, files a false return, "or otherwise fails to comply with [Article 1] . . . , the commissioner shall give the dealer ten days' notice in writing prior to requiring the dealer to appear before him or his assistant with the books, records, and papers required by the commissioner which relate to the business of the dealer. . . ." OCGA § 48-8-55 (a). Any dealer who fails to collect the tax is "liable for and shall pay the tax himself." OCGA § 48-8-35. If the tax becomes delinquent, the commissioner is required to issue a fi. fa. for the collection of the tax and impose penalties for the failure to pay the tax. OCGA §§ 48-8-56; 48-8-66. If a dealer is chronically delinquent in paying taxes, the commissioner can require the dealer to post a bond, and if necessary, the commissioner can sell any security deposited with him or her. OCGA § 48-8-57. Article 1 similarly provides criminal penalties for violations of its provisions. See OCGA §§ 48-8-10; 48-8-11.

OCGA §§ 48-8-95 and 48-8-119 further vest the commissioner with "the power and authority to promulgate such rules and regulations as shall be necessary for the effective and efficient administration and enforcement of the collection of the tax authorized to be imposed by [Article 1]." Those rules and regulations, which are compiled in Chapters 560-12-1-.01 through 560-12-6-.09 of the Rules & Regulations of the State of Georgia, provide extensive substantive and procedural requirements too numerous to list here. It should be noted, however, that Subchapter 560-12-1-.01 (7) provides an aggrieved party in a tax controversy the opportunity for a conference in the regional office of the Department of Revenue and a de novo review of the outcome. And, although Subchapters 560-12-5-.09 (1) and 560-12-6-.09 (1) clearly provide the *dealer* with a private right of action to collect unpaid taxes from a *purchaser*, there is no provision giving a county a similar right of action against a dealer who fails to properly remit the tax to the commissioner.

In summary, although Article 1 and the tax revenue rules and regulations provide a comprehensive scheme for the administration and collection of the local taxes, these authorities provide no express right of action for counties to sue dealers who fail to properly remit the taxes.

Neither do we find that the legislature intended to create or allow an implied right of action. See OCGA § 1-3-1 (a). "In the construction of a statute the legislative intent must be determined from a consideration of it as a whole. [Cit.]" *Williams v. Bear's Den*, 214 Ga. 240, 242 (104 SE2d 230) (1958). Although this is a case of first impression in this state, in *Middlesex County Sewerage Auth. v. Nat. Sea Clammers Assn.*, 453 U. S. 1 (101 SC 2615, 69 LE2d 435) (1981), the United States Supreme Court examined whether Congress intended to create a private right of action under a federal statute

that also contained extensive enforcement provisions. In *Sea Clammers*, the Court reviewed the enforcement and remedial provisions contained in the Federal Water Pollution Control Act and found that "[i]n view of [the] elaborate enforcement provisions [contained in the Act] it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under [the Act]. . . . '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' [Cits.]" Id. at 14-15.

Considering the comprehensive administrative scheme provided by the Georgia statutes and the Department of Revenue's rules and regulations, which include remedies for the failure to properly remit the taxes and an administrative forum for the resolution of controversies concerning the taxes, we conclude that the legislature did not intend for counties to have an independent right of action against dealers for damages resulting from the improper remittance of local sales taxes administered and collected by the commissioner. Rather, in light of the total administrative scheme, we find that the legislature's provision that the taxes are to be *"exclusively* administered and collected by the commissioner" precludes such action. (Emphasis supplied.) See OCGA §§ 48-8-87; 48-8-113. Any other result would allow tax beneficiaries such as Emanuel County to sue any taxpayer or dealers for failing to properly remit a tax, a situation which we believe would severely frustrate the orderly administration and collection of taxes by the commissioner. It defies logic to assume that the legislature intended such a scheme, and in the absence of any indicia to the contrary, we are compelled to conclude that the legislature "provided precisely the remedies it considered appropriate." *Sea Clammers*, supra at 15.

Accordingly, because Emanuel County cannot maintain an independent cause of action against the defendants, the trial court erred in denying the motions to dismiss.

*Judgment reversed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JUNE 25, 1997 —
RECONSIDERATION DENIED JULY 10, 1997 —

*Merrill, Stone & Parks, Charles B. Merrill, Jr.*, for appellant (case no. A97A0690).

*Bouhan, Williams & Levy, Roy E. Paul*, for appellant (case no. A97A0691).

*Spivey, Carlton & Edenfield, J. Franklin Edenfield, Dye, Tucker, Everitt, Wheale & Long, John B. Long, Jones & Smith, Julian B.*

*Smith, Jr., Savage & Turner, Brent J. Savage, Cheney, Walters & McCollough, Curtis V. Cheney, Jr.*, for appellee.