A00A2127. METZLER v. ROWELL et al.
(547 SE2d 311)

SMITH, Presiding Judge.

In this appeal we consider the application of OCGA § 9-11-11.1, the Georgia anti-SLAPP (Strategic Litigation Against Public Participation) statute, to a dispute between a landowner seeking to rezone a parcel of land for development and concerned residents of the affected neighborhood. Because the trial court properly applied the provisions of the statute and did not err in dismissing the complaint as to three of the defendants below, we affirm.[1]

Daniel A. Metzler brought this tort action in DeKalb County Superior Court against Atlanta City Council member Cathy Woolard, local residents Helen Loyless, Steven Rowell, and Rochelle Routman, and Wildwood Urban Forest Group ("Wildwood"). Most of the relevant facts are not disputed by the parties. Metzler owns approximately 31 acres of land in the Morningside neighborhood, located in the City of Atlanta and Fulton County. He filed a petition seeking to rezone the property to allow the construction of 34 houses on approximately nine acres. This zoning petition was opposed by numerous individuals from the community as well as by Wildwood, which the trial court described as "an unincorporated grass-roots environmental organization."

Metzler's zoning request was denied,[2] and Metzler appealed that decision to the Fulton County Superior Court in March 1999. Numerous individuals from the neighborhood, including the appellees in this case, filed a motion to intervene in the Fulton Superior Court action in June 1999. That motion was denied in December 1999. The Fulton County zoning appeal remained pending at the time of the DeKalb County trial court's order in this case.

In August 1999, Metzler entered into a contract with D. R. Horton, Inc. — Torrey ("Torrey") for Torrey to purchase and develop the land. Under the contract, Torrey had a period of 45 days within which it could, at its option, terminate and void the agreement by written notice to Metzler. During this period, Torrey had the right to enter on and inspect the land and perform various studies, including soil borings and percolation tests. During the week of September 20, 1999, Metzler alleges that Torrey attempted to perform a soil boring test. A concerned individual in the neighborhood called the police, apparently believing that the use of heavy equipment indicated that

---

[1] While this action was brought against numerous defendants, the trial court's order pertains only to defendants Rowell, Routman, and Wildwood Urban Forest Group. The remaining defendants are not parties to this appeal.

[2] The trial court noted that the proposed rezoning "was rejected by the neighborhood planning and City zoning officials at every level."

development had begun without a permit. Metzler alleges that "[d]efendants Woolard or Loyless or an unidentified third party believed to be a member, agent, or actor on behalf of" Wildwood made the telephone call; appellees Routman and Rowell deny having done so.

On September 24, 1999, an attorney representing "a number of the Morningside residents whose property adjoins or is downstream of the Dan Metzler/Torrey property" wrote a letter to Metzler's attorneys and Torrey. He noted that heavy equipment had been used to disturb the land for several days without a permit, including areas in the wetlands on the site and a state-mandated 25-foot stream buffer zone. He advised Metzler and Torrey that "all such activities must be terminated immediately" and that his clients otherwise would seek injunctive relief, and he asked that Metzler and Torrey call him at their earliest convenience to inform him of their intentions. Metzler also alleges that city council member Woolard contacted the Torrey vice president for acquisitions, told him that the property was the subject of a lawsuit and that the City of Atlanta would oppose any effort to develop the land, and asked to be informed of its decision. On September 28, 1999, Torrey notified Metzler that it would not purchase the land.

Metzler then brought this DeKalb County action against Woolard as well as Loyless, Rowell, Routman, and Wildwood, alleging tortious interference with the sales option contract with Torrey, tortious interference with business relations, trespass, and interference with his right of quiet enjoyment of his property.[3] He sought punitive damages and injunctive relief.

Rowell and Routman immediately filed a motion to dismiss on numerous grounds, including the provisions of OCGA § 9-11-11.1, and Wildwood joined them in amended motions to dismiss, a motion for protective order, and a motion to quash. The trial court determined that Metzler's action violated OCGA § 9-11-11.1. The trial court also found Metzler's remaining claims to be without merit and that Wildwood was never properly served. This appeal followed.

1. Metzler contends that the trial court erred in finding that his action was a "SLAPP suit" under OCGA § 9-11-11.1. We disagree.

OCGA § 9-11-11.1 is intended to protect Georgia citizens who participate in "matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances" from "abuse of the judicial process." OCGA § 9-11-11.1 (a). To prevent such abuse, the statute

---

[3] City council member Woolard, who does not live in the Morningside neighborhood, is the only party with any connection to DeKalb County, where Metzler brought this action. Metzler asserts jurisdiction over the other defendants in DeKalb County as joint tortfeasors.

provides that a claim that could reasonably be construed as infringing upon these rights must be accompanied by a detailed verification and provides for a motion to dismiss and hearing on this issue. OCGA § 9-11-11.1 (b). See generally *Providence Constr. Co. v. Bauer*, 229 Ga. App. 679, 680 (1) (494 SE2d 527) (1997) (full concurrence as to Division 1). Even if a verification is filed with the complaint, the trial court may nevertheless impose sanctions, including dismissal, "[i]f a claim is verified in violation of this Code section." OCGA § 9-11-11.1 (b). The mechanical filing of a verification with the complaint, therefore, does not preclude dismissal if the claim is found by the trial court to infringe on the rights of free speech or petition as defined by the statute.

In interpreting this statute, we first consider the expansive definition of protected speech and petition under OCGA § 9-11-11.1 (c):

As used in this Code section, "act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" includes any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.

Subsection (b) of this Code section also references the privilege statute, OCGA § 51-5-7, specifically subsection (4), and the privilege statute in its turn incorporates the free speech and petition definition set out in OCGA § 9-11-11.1 (c). As established by these interlocking Code sections, the law includes two alternative definitions of a protected statement: any statement made to any "official proceeding authorized by law"; or any statement made *in connection with an issue under consideration* by any official proceeding. The dissent fails to take into account the scope of the latter definition.

At the time of the acts complained of, Metzler's zoning petition had been pending for some time before the City of Atlanta, and a lawsuit was pending in Fulton Superior Court, as Metzler acknowledged in his verified complaint and the trial court noted in its order. While the zoning matter, the lawsuit, and the defendants' petition to intervene in the lawsuit were all pending, there were several "official proceedings" under way, and virtually all the conduct complained of falls within the scope of this very expansive definition. A letter written by

an attorney for parties to a petition to intervene, directed to the owner of the land in litigation and a developer actually performing work on that land, is clearly made "in connection with an issue" of zoning and development under consideration by a "judicial body."

The framing of Metzler's claims as tortious interference with contract or business relations does not render the assertion of privilege inapplicable. The statements complained of are not only privileged within the meaning of OCGA §§ 9-11-11.1 (c) and 51-5-7 (4), but also under the similar "good faith statements" provisions of OCGA § 51-5-7 (3), as the trial court noted in its order. In dismissing the action, the trial court relied in part on *Choice Hotels Intl. v. Ocmulgee Fields*, 222 Ga. App. 185 (474 SE2d 56) (1996). In *Choice*, Ocmulgee, a hotel franchisee, claimed that the franchisor, Choice, tortiously interfered with its contractual rights. Ocmulgee's principal was involved in a long-running dispute with Choice that resulted in Ocmulgee's attempted cancellation of the franchise agreement and an attempt to contract with another hotel franchise. Choice then wrote a letter to the other franchise informing it that Ocmulgee was still under contract with Choice; it was this letter that Ocmulgee claimed constituted tortious interference. Id. at 188. We held that Choice's interest in its contract with Ocmulgee was "a valid interest that Choice was entitled to uphold" and that its letter was "made on a proper occasion, its publication was limited to those concerned, . . . and it was properly limited in scope." Id. at 188-189 (2). Similarly, the neighborhood residents in this case had a valid interest in the zoning and development of their immediate surroundings, and a letter expressing their legal position, sent through an attorney, was made on a proper occasion and limited to those concerned: Metzler and the third party holding an option on the property and performing work there.

The privilege established by the anti-SLAPP statute was correctly applied by the trial court to the facts and circumstances set forth here, and the trial court did not err in granting the motion to dismiss.

2. Metzler also makes allegations of trespass and interference with property rights by removing surveyor's pins, blocking access to the property, "screaming obscenities" at him, and placing or removing signs on the property. While the placing of signs or speech under certain circumstances might fall within the purview of OCGA § 9-11-11.1, it seems apparent that trespass by pulling up land markers, defacing property, or blocking ingress and egress (without more) is not covered by the statute as none of these actions constitutes a "written or oral statement." See generally *Browns Mill Dev. Co. v. Denton*, 247 Ga. App. 232, 234 (1) (b) (543 SE2d 65) (2000) (physical precedent only).

But we need not reach these allegations with respect to appellees here. The allegations of trespass and interference with property rights in Metzler's complaint are limited to Loyless, who is not a party to this appeal, acting "alone or in conjunction with other individuals" who are never identified. The trial court limited its dismissal on this count to Rowell, Routman, and Wildwood *only*. Woolard and Loyless, who are defendants below but not parties to this appeal, are alleged to be the individuals involved in the call to the police, the alleged trespass, and telephone calls to an officer of the third party. While Metzler makes a comprehensive allegation that all defendants were jointly and severally involved in each act, he gives no supporting facts, and both Rowell and Routman have explicitly denied contacting the police, contacting Torrey, or interfering with Metzler's property by touching surveyor's markers, blocking access, or making any statements to Metzler. Particularly in light of the discovery and evidentiary standards of OCGA § 9-11-11.1, as discussed below, Metzler was not entitled to stand on the general and conclusory allegations of his complaint in the face of direct testimony to the contrary, and the trial court did not err in dismissing the complaint as to these parties.

3. Metzler contends that the trial court's decision should have been made on summary judgment rather than a motion to dismiss. This was not necessary, however, in light of the clear mandate contained in the anti-SLAPP statute. In OCGA § 9-11-11.1 (b) and (c), the General Assembly has established a mechanism by which the threshold question of compliance with the anti-SLAPP statute is decided on motion to dismiss or motion to strike. This is analogous to the statutory mechanism of OCGA § 9-11-12 (b), which provides that *only* motions under Rule 12 (b) (6) for failure to state a claim are converted to summary judgment. Other motions under 12 (b), such as to dismiss for lack of jurisdiction or for insufficiency of process, are not subject to this statutory rule, and such a motion, even "when tried on affidavits pursuant to OCGA § 9-11-43 (b), does not become a motion for summary judgment." (Citations omitted.) *Terrell v. Porter*, 189 Ga. App. 778, 779-780 (2) (377 SE2d 540) (1989). The application of this rule is made plain by OCGA § 9-11-11.1 (d), which expressly provides that the trial court in its discretion may order limited discovery despite the stay imposed when a motion to dismiss or strike is filed pursuant to subsection (b). When the statutory scheme provides for limited discovery in conjunction with the filing of a motion to dismiss or motion to strike, the introduction of evidence produced by that discovery should not convert the motion to one for summary judgment. If Metzler wished to conduct discovery and introduce evidence to show that dismissal of his complaint as to these defendants was inappropriate despite the privilege established by OCGA §§ 9-11-11.1

(b) and 51-5-7, he could have petitioned the trial court for any necessary discovery and introduced evidence in accordance with the statutory provisions.

4. Finally, Metzler contends the trial court erred in finding that he failed to effectuate proper service upon Wildwood. The question of proper service is also a matter that can be decided on motion to dismiss even if affidavits are introduced. "Motions to dismiss for insufficiency of service of process are matters in abatement, and do not form a proper basis for motions for summary judgment or convert to motions for summary judgment when matters outside the pleadings are considered. [Cit.]" *Cushman v. Raiford*, 221 Ga. App. 785, 786 (472 SE2d 554) (1996). The trial court properly considered affidavits regarding the composition and organization of Wildwood. As with OCGA § 9-11-11.1 (d), Metzler could have conducted limited discovery or deposed the defendants on this issue, but he did not do so. The only allegation is that made in the complaint: that Loyless, Rowell, and Routman are each "an official and/or member" of Wildwood, and Wildwood may be served by serving them. This general allegation was directly refuted by the affidavits of Rowell and Routman.

*Sheet Metal Workers Intl. Assn. v. Carter*, 241 Ga. 220 (244 SE2d 860) (1978), is not applicable here, as it does not permit service on mere "members" rather than "official members" as defined in that decision. In *Carter*, service was purportedly made upon the union by serving a rank-and-file member of a union local. The case holds that "official member," as set out in the applicable statute, means

> a person who is clothed with some official duty or status to perform for the association or organization, other than that imposed upon an officer; a duty or status which is also more than that imposed upon a person solely because he is listed as a member on the official rolls of the association or organization.

Id. at 222. Metzler failed to show proper service on an "official member" of Wildwood, although he had the opportunity to do so.[4] The trial court correctly determined, based upon the evidence before it, that

---

[4] Metzler relies in his brief on a Wildwood website which as of this writing shows several of the defendants as "co-founders" or members of a "steering committee" for Wildwood. But even assuming without deciding that a website posting might be competent to show membership in Wildwood, Metzler did not introduce any evidence to this effect below. We are limited in our review to matters contained in the appellate record, and a party cannot use his brief as a procedural device to add evidence to the record. "It is an ancient and honored tenet of law that we do not take evidence from the briefs of parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court." (Citations and punctuation omitted.) *Demetrios v. State*, 246 Ga. App. 506, 510, n. 14 (541 SE2d 83) (2000).

Metzler failed to effectuate proper service upon Wildwood.

*Judgment affirmed. Pope, P. J., Andrews, P. J., Johnson, P. J., and Phipps, J., concur. Eldridge and Barnes, JJ., dissent.*

ELDRIDGE, Judge, dissenting.

I respectfully dissent.

The tortious conduct of the defendants had no direct relationship with either the previous rezoning application or the pending suit appealing such denial. The lawsuit alleged defendants' conduct was designed to block the private land sale, because the defendants wanted no development on plaintiff's land under any circumstances. Thus defendants' conduct was unrelated to the exempt conduct of the Anti-SLAPP Statute. The defendants' conduct was part of the overall opposition to any development of this land whether under the existing zoning, non-Anti-SLAPP protection, or a rezoning, Anti-SLAPP protection. Torrey's purchase and development of the land for houses were under the existing City of Atlanta zoning and existing state and federal environmental laws and regulation. The defendants' action was not directed as free speech or right of petition to influence the news media, the judiciary, public officials, or even the public, but such action was directed in private to a private person, Torrey, to chill the purchase by contract through harassment from the neighborhood and environmental groups and threat of costly litigation in terms of time and money. Such conduct falls outside the intent and purpose of not only the Anti-SLAPP Statute but also is not privileged conduct. This opinion constitutes an unreasonable judicial expansion of such narrowly drawn statutes contrary to the express intent of the General Assembly.

The cardinal rule of statutory construction is the determination of the legislative intent and purpose. Where a statute is clear, plain, and unambiguous, the courts must construe the statute according to its exact terms, because the language of the statute is a clear expression of the intent of the legislature in passing such statute, and courts are prohibited from broadening its application by judicial construction. *Davis v. Emmis Publishing Corp.*, 244 Ga. App. 795 (536 SE2d 809) (2000) (Eldridge, J., concurring specially); see also *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Statutes in derogation of the common law must be strictly construed against the party asserting the right under the statute. *Davis v. Emmis Publishing Corp.*, supra; *Corner v. State*, 223 Ga. App. 353, 355 (477 SE2d 593) (1996); *Hester v. Chalker*, 222 Ga. App. 783, 784 (476 SE2d 79) (1996).

Under the clear and unambiguous language of OCGA § 9-11-11.1 (c) as to the scope of the statute's protection, the General Assembly expressly limited the statutory meaning of " 'act in furtherance of the

right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern' " to a petition to a legislative, executive, judicial body, or "other official proceeding authorized by law" in connection with an issue under consideration or review before such body by any written or oral statement, writing, or petition, which applies only to certain First Amendment rights, and not *all* exercise of First Amendment rights. See OCGA § 9-11-11.1; *Browns Mill Dev. Co. v. Denton*, 247 Ga. App. 232-233 (1) (543 SE2d 65) (2000). Contrary to the majority, this was not broadly defined. The statute deals only with "abusive litigation that seeks to chill exercise of *certain First Amendment rights.*" (Emphasis supplied.) *Great Western Bank v. Southeastern Bank*, 234 Ga. App. 420, 422 (507 SE2d 191) (1998); see also *Browns Mill Dev. Co. v. Denton*, supra at 233. Thus, to be covered by the statute, the conduct of free speech and petition to government must be the conduct that is the basis of suit. OCGA § 9-11-11.1 (a); see also caption of the Act in Ga. L. 1996, pp. 260-261; *Browns Mill Dev. Co. v. Denton*, supra at 233. To come within the statute, the speech or petition must be directed to or made before a legislative, executive, or judicial body in regard to an executive, legislative, or judicial proceeding or any other official proceeding authorized by law involving an issue of public interest or concern to influence its actions in such regard and not to private individuals or legal entities. OCGA § 9-11-11.1 (b), (c); *Browns Mill Dev. Co. v. Denton*, supra at 232-233.

Statutory privileged speech or action is public speech or action as a form of First Amendment petition directed to one or more branches of government to influence its official function, as opposed to private speech or action directed toward a private individual to influence such individual's private action.[5] See generally *Nairon v. Land*, 242 Ga. App. 259, 260 (529 SE2d 390) (2000). "[T]his statute shall not be broadened to extend the privilege of tort immunity that abrogates a common law cause of action by judicial construction." *Davis v. Emmis Publishing Corp.*, supra (Eldridge, J., concurring specially).

While the sale of plaintiff's land was an issue of public interest or concern and involved free speech, this alone was insufficient to bring such conduct within the ambit of OCGA § 9-11-11.1 and did not

---

[5] *Field v. Kearns*, 43 Conn. App. 265 (682 A2d 148, 153) (1996); see also Beatty, The Legal Literature on SLAPPs: A Look Behind the Smoke Nine Years After Pring and Canan First Yelled "Fire!", 9 U. Fla. J. L. & Pub. Pol'y, 85, 96 (1997); Baruch, If I Had a Hammer: Defending SLAPP Suits in Texas, 3 Tex. Wesleyan L. Rev. 55, 57 (1996); Hargus, Civil Practice Act: Prohibit a Civil Litigant from Interposing a Claim for Improper Purpose, 13 Ga. St. U. L. Rev. 23, 28 (1996).

create a legal interest, because the conduct was directed at a private corporate entity, Torrey, and was not directed to an executive, legislative, or judicial body during any proceeding authorized by law, even though there was a judicial appeal pending.[6] Thus, statutory protection of the right of governmental petition cannot cloak private tortious action of a nonpetition nature designed to chill and to interfere with contract rights to which the defendants had no standing as parties or privies. See *Davis v. Emmis Publishing Corp.*, supra (Eldridge, J., concurring specially).

This tort action may be a SLAPP suit in the broadest sense that it is directed toward community activists who seek to thwart; however, the defendants have no anti-SLAPP protection under either the narrowly drawn definition of SLAPP protection under OCGA § 9-11-11.1 or § 51-5-7 (4), because the General Assembly chose to narrowly tailor the protection of the statute to exclude anything other than petitions to governmental entities or public comment to influence government.[7]

In this case, the conduct complained of did not occur before any legislative, executive, or judicial body, nor was such conduct part of any legislative, executive, judicial, or any other official proceeding authorized by law as an exercise of petition, nor was it public comment to influence a governmental or judicial body in its decision making. It was a blatant attempt to stop the sale of the land for development for homes. Thus, it was private action directed to private individuals rather than governmental petition or an effort to influence government action. See *Browns Mill Dev. Co. v. Denton*, supra at 232-233.

Under the complaint, the conduct involved defendants (1) calling the police to stop soil testing on plaintiff's land by Torrey; (2) defendants' counsel writing to plaintiff's counsel and Torrey threatening lawsuit if further soil or wetland disturbance occurred on the plaintiff's land; and (3) having direct contact with Torrey demanding to know if it intended to exercise its contract option to purchase plaintiff's land and to build homes on the land within the existing zoning. Plaintiff contended in its complaint that all of such conduct was intended to threaten, coerce, and intimidate Torrey with trouble, delay, and expense from community action, opposition, and threat of lawsuit so that it would chill the purchase of plaintiff's land and thereby avoid development of the land. It was alleged that this action

---

[6] "The Act narrowed the definition of protected speech as originally proposed. The original version covered 'any written or oral statement, writing, or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern.'" (Citations omitted.) 13 Ga. St. U. L. Rev., supra at 29, n. 53.

[7] 13 Ga. St. U. L. Rev., supra at 29, n. 53.

by the defendants intentionally and maliciously chilled plaintiff's business opportunity and drove off the prospective purchaser. None of such private conduct comes within OCGA § 9-11-11.1, because the conduct did not involve a petition of government or free speech directed toward the influence of government action. Compare *Providence Constr. Co. v. Bauer*, 229 Ga. App. 679, 680 (1) (494 SE2d 527) (1997) (physical precedent only) (written petition opposing rezoning, letters to county officials, and speaking before the county planning commission in opposition to the rezoning, such conduct was petition of government) and *Browns Mill Dev. Co. v. Denton*, supra at 232-233 (written materials directed to public officials and the news media to influence zoning and the enforcement of environmental laws and regulations).

Further, even if defendants' conduct came within OCGA § 9-11-11.1 (b), the timely skeletal statutorily mandated verifications by plaintiff and by his counsel filed with the complaint satisfied the statutory requirements that it was sworn to, had not been interposed for an improper purpose, and was meritorious. OCGA § 9-11-11.1 (b); *Davis v. Emmis Publishing Corp.*, supra; *In re Carter*, 235 Ga. App. 551, 553 (1) (510 SE2d 91) (1998). There was substantial compliance with the statute. See OCGA § 1-3-1 (c); *Health Horizons v. State Farm &c. Ins. Co.*, 239 Ga. App. 440, 443-444 (521 SE2d 383) (1999).

The majority is correct that OCGA § 51-5-7 (4) was added in the same Act that created OCGA § 9-11-11.1, but such amendment did not extend to other provisions under OCGA § 51-5-7; specifically, OCGA § 51-5-7 (3) (good faith intent to protect an interest) was not made applicable as argued by the majority. Ga. L. 1996, p. 260, §§ 1, 2. However, the privilege under OCGA § 51-5-7 (4) is limited to free speech and right to petition government for a redress of grievances on matters of public interest as defined in OCGA § 9-11-11.1 and does not extend to private action outside the ambit of the Anti-SLAPP Statute. See generally *Browns Mill Dev. Co. v. Denton*, supra at 232-233.

Thus, the speaker's interest does not provide a qualified privilege under OCGA § 51-5-7 (3) to interfere with private contract rights to which they are strangers, and such interpretation as urged by the majority would create an unjustified expansion of OCGA §§ 9-11-11.1 and 51-5-7 (3).

> The particular privilege applicable here is the protection of the speaker's interest under OCGA § 51-5-7 (3). This privilege, while primarily applicable to claims of libel and slander, may also be asserted as a defense to a claim for tortious interference with contractual relations. Statements made with a good faith intent on the part of the speaker to protect

his interest in a matter in which he is concerned are privileged. OCGA § 51-5-7 (3). To make the defense of privilege complete . . . good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear.

(Citations and punctuation omitted.) *Choice Hotels Intl. v. Ocmulgee Fields*, 222 Ga. App. 185, 188 (2) (474 SE2d 56) (1996); see also *NationsBank v. SouthTrust Bank of Ga.*, 226 Ga. App. 888, 892 (1) (A) (1) (487 SE2d 701) (1997) (physical precedent only).

The tortfeasor must be a "stranger" to the business relationship at issue; a party, under appropriate circumstances, can be a non-signer of a particular contract and yet not be a stranger to the contract itself or to the business relationship giving rise thereto and underpinning it.

(Citations omitted.) *Renden, Inc. v. Liberty Real Estate &c.*, 213 Ga. App. 333, 336 (2) (b) (444 SE2d 814) (1994). " 'The term "malicious" or "maliciously" means any unauthorized interference or any interference without justification or excuse.' " *St. Mary's Hosp. of Athens v. Radiology Professional Corp.*, 205 Ga. App. 121, 124 (2) (421 SE2d 731) (1992). The defendants had no legal interest recognized within the law to interfere with the contract.

*Choice Hotels Intl. v. Ocmulgee Fields*, supra at 188-189, as relied upon by the majority for the expansion of a good faith interest, provides no privilege to the defendants in this case under either the facts or law, because in that case, *Choice* had an existing contractual relationship regarding the franchise by contract, which *Ocmulgee* sought to transfer to Holiday Inn; thus, Choice had a material pecuniary interest in the transfer of the franchise from it to Holiday Inn and was not a stranger to the contract. In this case, the defendants were strangers to the contract and had no legal interest or standing but sought to chill the contract to prevent the contract's exercise. Id. at 188. To hold otherwise will unreasonably expand the effect of this Anti-SLAPP Statute beyond the express intent of the General Assembly.

Further, unless the allegations of the complaint disclose with certainty that plaintiff would not be entitled to relief under any state of provable facts, a complaint should not be dismissed. See *Storm Systems v. Kidd*, 157 Ga. App. 527, 528 (3) (278 SE2d 109) (1981); see also *Tri-City Sanitation v. Action Sanitation Svc.*, 227 Ga. 489 (181 SE2d 377) (1971). In deciding such motion to dismiss for failure to state a cause of action, all pleadings must be construed most favorably to the pleader, and all doubts regarding the pleadings must be

resolved in the pleader's favor. *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997); *Cellular One v. Emanuel County*, 227 Ga. App. 197-198 (489 SE2d 50) (1997).

Tortious interference with contractual, business, or potential business relations occurs when (1) there is improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the tortious conduct proximately caused damage to the plaintiff. *Hylton v. American Assn. &c.*, 214 Ga. App. 635, 638 (2) (448 SE2d 741) (1994); *Renden, Inc. v. Liberty Real Estate &c.*, supra at 334-335 (2). Plaintiff's complaint has pled all these elements.

Also, plaintiff has pled that the defendants interfered with his property rights by disturbing survey stakes and monuments. OCGA § 44-1-15. Thus, a question of fact has been created.

A dismissal under OCGA § 9-11-11.1 (b) and (c) is in abatement and not in bar under OCGA § 9-11-12 (b) and does not act as an adjudication upon the merits. See *Browns Mill Dev. Co. v. Denton*, supra at 236, n. 2. An adjudication on the merits by OCGA § 9-11-12 (b) (6) (motion to dismiss for failure to state a claim), (c) (judgment on the pleadings), or § 9-11-56 (summary judgment) are inappropriate means to deal with a defense in abatement. See *Terrell v. Porter*, 189 Ga. App. 778, 779-780 (2) (377 SE2d 540) (1989). "Subject matter jurisdiction is simply a power that is conferred by law upon a class of cases that authorizes a court within such class to grant a particular form of relief that might be sought by, or accorded to, a party before it." *Wallace v. Meyer*, 260 Ga. 253, 255 (5) (b) (394 SE2d 350) (1990). Where a trial court is deprived of such powers when a condition precedent to sue has not been satisfied, the trial court lacks subject matter jurisdiction under those circumstances unless and until the condition precedent is met. Since the filing of an adequate affidavit is a condition precedent to instituting an action coming within the Anti-SLAPP Statute, then failure to comply requires the trial court to involuntarily dismiss without prejudice or strike such action, i.e., lack of subject matter jurisdiction. See generally *Empire Fire &c. Ins. Co. v. Metro Courier Corp.*, 234 Ga. App. 670, 673 (2) (507 SE2d 525) (1998); *Rehco Corp. v. California Pizza Kitchen*, 192 Ga. App. 92, 94 (383 SE2d 643) (1989); *Taco Bell Corp. v. Carlson Corp.*, 190 Ga. App. 481, 483 (379 SE2d 6) (1989). Thus, I agree with the majority that a dismissal under the Anti-SLAPP Statute, OCGA § 9-11-11.1, does not constitute an adjudication on the merits and should not be dealt with by summary judgment.

I am authorized to state that Judge Barnes joins in this dissent.

DECIDED MARCH 14, 2001.

*Hawkins & Parnell, Jack N. Sibley, Carl H. Anderson, Jr.*, for appellant.

*Goodman, McGuffey, Aust & Lindsey, Judy F. Aust, Ernest R. Bennett, Jr., Stack & Associates, Donald D. J. Stack, Martin A. Shelton, Michael W. Broadbear*, for appellees.