A07A0493. HAGEMANN v. CITY OF MARIETTA et al.

(650 SE2d 363)

PHIPPS, Judge.

Bill Hagemann contends that the trial court erred by not striking counterclaims asserted against him by the City of Marietta, arguing that the counterclaims violate Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, codified at OCGA § 9-11-11.1. He contends also that the trial court erred by denying his motion for attorney fees under that statute. We agree with Hagemann that the counterclaims violate the statute and therefore reverse the contested rulings.[1] On the issue of attorney fees, we remand this case for proceedings consistent with this opinion.

In October 2005, Hagemann sued Marietta, seeking a declaratory judgment that the city had rezoned approximately 18.5 acres, adjacent to property he owned, without complying with the Code of Marietta and The Zoning Procedures Law[2] and that the rezoning was therefore void. Marietta denied in its answer that it had failed to comply with zoning requirements.

About three months later, Marietta filed a motion to amend its pleading by asserting counterclaims against Hagemann.[3] In its proffered pleading, Marietta alleged that it had adopted a comprehensive redevelopment plan for the city; that in furtherance of that plan, it

---

[1] In the same order, the trial court granted a motion to intervene filed by an investment group. That ruling is not challenged.

[2] See OCGA § 36-66-1 et seq.

[3] See OCGA § 9-11-13 (f).

had established a Tax Allocation District (TAD) and allocated future tax revenues to support such district; that the rezoned property lay within that district; that it was seeking TAD bonds to finance the redevelopment of the district; that Hagemann's lawsuit could possibly impede the TAD bond financing; that Hagemann's lawsuit would delay or stop the redevelopment of the rezoned property, upon which an apartment complex was situated; that Hagemann had "publicly stated" that the purpose of his lawsuit was to obtain zoning concessions from the owner of the rezoned property; and that Hagemann's lawsuit constituted "an abuse of process for the sole purpose of obtaining personal and private gain."

Marietta sought damages and attorney fees, setting out four "counts": (1) if Hagemann's lawsuit caused the apartment complex not to be demolished and the property not to be redeveloped, the values of adjoining properties would decrease, and Marietta would lose revenue; (2) Hagemann's lawsuit would diminish Marietta's tax revenue and lower its tax digest, while the police, fire, and other public services demanded by the apartment complex would cost the city approximately $900,000 per year; (3) the continued existence of the apartment complex currently situated on the rezoned property would continue to burden the city's taxpayers and citizens by diminishing the values of adjoining properties and by increasingly requiring police, fire, and other public services; and (4) if Hagemann's lawsuit caused a particular developer to abandon the redevelopment project, "the TAD funding sought by the city" could be negatively affected by a higher interest rate, a lower loan amount or a longer payback period.

Opposing Marietta's motion, Hagemann argued, among other things, that Marietta's proposed pleading merely sought to chill his right of free speech and his right to petition the government to right a wrong, in violation of the anti-SLAPP statute. In addition, Hagemann filed a motion to strike the (proposed) counterclaims, arguing specifically that each of the counts fell within the purview of the anti-SLAPP statute; that the counterclaims were not verified as required by that statute; that even if the counterclaims were subsequently verified, Marietta's proposed pleading, on its face, showed that the verification would be false; that nothing in Marietta's proposed pleading demonstrated a cognizable cause of action; and that under the anti-SLAPP statute, he was entitled to attorney fees expended in opposing Marietta's motion to assert the counterclaims. In response, Marietta filed affidavits of its mayor and attorney as verification contemplated by the anti-SLAPP statute.[4]

---

[4] See OCGA § 9-11-11.1 (b).

The court conducted a hearing. Marietta's attorney described the apartment complex situated on the rezoned property as "a major problem" for Marietta, "a burden on the police department," and "a burden on our school system." The attorney asserted that if the complex is demolished, "It's no longer rental property. It's replaced by upscale single family homes, which is what Marietta would like to build." He expounded upon the financial aspects of Marietta's redevelopment plan, stating that the city had approved the rezoned property to be a part of a TAD district. He explained, "[W]hat that means is that the City can go out and do special bonding to help a project get redeveloped." According to the attorney, Hagemann's lawsuit had halted the sale of the property to a developer and had "stopped Marietta from doing TAD bonds in that district. With a lawsuit pending, there can be[ ] no TAD financing, and no lender is going to touch this project as long as this lawsuit is pending."

Marietta's attorney further explained that the city had delayed asserting counterclaims because it had appeared for some time that the city, Hagemann, and the owner of the rezoned property would resolve their conflicts regarding the rezoned property. The attorney reported to the court, "[I]t did not get settled. And, unfortunately, we're standing here today, and it's not settled. So we're asking the Court to allow Marietta to file its supplemental pleading." In addition, Marietta's attorney argued that Hagemann's motion to strike the counterclaims was premature because the court had not ruled to allow them.

Hagemann's attorney acknowledged that the city's counterclaim motion had not been granted, but stated to the court that he had both opposed Marietta's motion and separately filed a motion to strike because "the spuriousness of the nature of the claims is something Your Honor should look at" in deciding whether to allow them. He characterized Marietta's proffered pleading as "simply basically alleging that the property is [in] such awful shape that it should be a tort for [Hagemann] to even [challenge] the zoning because the new project coming along is so much better." The attorney accused Marietta of attempting to silence Hagemann with the threat of damages and argued that such tactic was precisely the conduct targeted by the anti-SLAPP statute. Moreover, the attorney argued that Hagemann's declaratory judgment action challenging Marietta's rezoning was a privileged statement under the anti-SLAPP statute, citing OCGA § 51-5-7 (4).[5]

---

[5] See infra.

In its order, the court granted Marietta's motion to add the counterclaims and then denied summarily Hagemann's motion to strike. This court granted Hagemann's application for interlocutory review.

1. Hagemann contends that the trial court erred by not striking the counterclaims as violative of the anti-SLAPP statute.

> [T]he purposes of Georgia's anti-SLAPP statute are to encourage citizen participation in matters of public significance through the exercise of the right of free speech and the right to petition the government for redress of grievances, and to prevent their valid exercise from being chilled through abuse of the judicial process.[6]

"To accomplish these purposes, the crucial statutory provision is OCGA § 9-11-11.1 (b)."[7] Among other things, that provision requires that written verification under oath accompany any claim asserted against a person arising from an act "which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances . . . in connection with an issue of public interest or concern."[8] As defined in OCGA § 9-11-11.1 (c), such an act

> includes any written or oral statement, writing, or petition made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, or any written or oral statement, writing, or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.[9]

OCGA § 9-11-11.1 (b) sets forth that the verification must certify that the party and his attorney, if any,

> have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a

---

[6] *Atlanta Humane Society v. Harkins*, 278 Ga. 451, 452 (1) (603 SE2d 289) (2004); see OCGA § 9-11-11.1 (a).

[7] *Atlanta Humane Society*, supra, 278 Ga. at 452-453 (punctuation omitted).

[8] OCGA § 9-11-11.1 (b); see *Ga. Community Support & Solutions v. Berryhill*, 275 Ga. App. 189, 190 (1) (620 SE2d 178) (2005), aff'd, *Berryhill v. Ga. Community Support & Solutions*, 281 Ga. 439 (638 SE2d 278) (2006).

[9] See *Berryhill*, supra, 281 Ga. at 440-443 (explaining limited scope of OCGA § 9-11-11.1 (c)).

good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the costs of litigation.[10]

OCGA § 51-5-7 (4), in turn, provides that a statement is privileged if it was "made in good faith as part of an act in furtherance of the right of free speech or the right to petition government for a redress of grievances . . . in connection with an issue of public interest or concern. . . ."

A trial court may dismiss a claim that was falsely verified.[11] To do so, "[f]irst, the court must make a threshold finding that the anti-SLAPP statute applies and that verification was required."[12]

Second, the court must make a substantive, evidentiary determination that "(a) the claimant or his attorney did not reasonably believe that the claim was well grounded in fact and that it was warranted by existing law or a good faith argument for the modification of existing law, (b) the claim was interposed for an improper purpose, or (c) the defendant's statements were privileged pursuant to OCGA § 51-5-7 (4)."[13]

Discovery is stayed upon the filing of a motion to dismiss for failure to comply with the anti-SLAPP statute's verification requirements, but the trial court may nevertheless allow limited discovery to resolve the motion.[14]

Hagemann argues that his act of filing the declaratory judgment fell within the purview of the anti-SLAPP statute; that Marietta's counterclaims arose from his act of seeking judicial review of a local government decision; and that certifications that accompanied Marietta's counterclaims were falsely verified. We agree.

---

[10] OCGA § 9-11-11.1 (b).

[11] *Atlanta Humane Society*, supra, 278 Ga. at 452; *Ga. Community Support & Solutions*, supra, 275 Ga. App. at 191.

[12] *Ga. Community Support & Solutions*, supra, 275 Ga. App. at 191; see *Atlanta Humane Society*, supra, 278 Ga. at 452.

[13] *Ga. Community Support & Solutions*, supra, 275 Ga. App. at 191 (footnote omitted), quoting *Atlanta Humane Society*, supra, 278 Ga. at 452.

[14] OCGA § 9-11-11.1 (d); *Ga. Community Support & Solutions*, supra, 275 Ga. App. at 191.

Hagemann's declaratory judgment action challenging the rezoning constitutes a petition to the judiciary for a redress of grievances in connection with an issue of public interest or concern.[15] It comes within the ambit of the anti-SLAPP statute.[16] Marietta's counterclaims, the record shows, were filed in response to the declaratory judgment action. Thus, the anti-SLAPP statute requires verification of the counterclaims.[17]

Marietta filed verifications, but the mere filing of verification does not preclude dismissal of a claim (or a counterclaim) where the verification was false.[18] Here, the record demonstrates false verifications by the city's mayor and attorney that to the best of their knowledge, information, and belief formed after reasonable inquiry, the counterclaims are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. At best, the allegations of Marietta's counterclaims imply that Hagemann's declaratory judgment action makes him liable under the Abusive Litigation Article of Chapter 7 of Title 51 of the OCGA.[19] But assertion of an abusive litigation claim requires, among other things, "the final termination of the proceeding in which the alleged abusive litigation occurred. . . ."[20] Unquestionably, the "alleged abusive litigation" here — Hagemann's declaratory judgment action — had not terminated. Thus, to the extent Marietta was seeking to establish liability under the Abusive Litigation Title, such effort was premature.[21] The allegations of the counterclaims, construed in the light

---

[15] See OCGA § 9-11-11.1 (b), (c); *Atlanta Humane Society*, supra, 278 Ga. at 455 (2).

[16] See *Browns Mill Dev. Co. v. Denton*, 247 Ga. App. 232, 234 (1) (a) (543 SE2d 65) (2000), aff'd, *Denton v. Browns Mill Dev. Co.*, 275 Ga. 2 (561 SE2d 431) (2002); compare *Ga. Community Support & Solutions*, supra, 275 Ga. App. at 191-192.

[17] See *Browns Mill Dev. Co.*, supra, 247 Ga. App. at 234 (1) (a); compare *Ga. Community Support & Solutions*, supra, 275 Ga. App. at 191-192.

[18] *Atlanta Humane Society*, supra, 278 Ga. at 452; *Metzler v. Rowell*, 248 Ga. App. 596, 598 (1) (547 SE2d 311) (2001).

[19] OCGA § 51-7-80 et seq. OCGA § 51-7-85 pertinently declares, "[N]o claim other than as provided in this article or in Code Section 9-15-14 shall be allowed, whether statutory or common law, for the torts of malicious use of civil proceedings, malicious abuse of civil process, nor abusive litigation. . . . This article is the exclusive remedy for abusive litigation." OCGA § 9-15-14 allows for litigation costs and attorney fees "upon the motion of any party." OCGA § 9-15-14 (b). Marietta's request for attorney fees set forth in its counterclaim pleading is not properly construed as an OCGA § 9-15-14 motion because "a trial court may not entertain an OCGA § 9-15-14 request asserted only in the form of a counterclaim." *Glass v. Glover*, 241 Ga. App. 838, 839 (528 SE2d 262) (2000) (citation omitted). However, nothing in this opinion precludes either party from filing a motion as permitted by that Code section. See generally *EarthResources, LLC v. Morgan County*, 281 Ga. 396, 400 (4) (638 SE2d 325) (2006).

[20] OCGA § 51-7-84 (b).

[21] See *State Soil & Water Conservation Comm. v. Stricklett*, 252 Ga. App. 430, 438 (3) (c) (555 SE2d 800) (2001) (counterclaim for abusive litigation pursuant to OCGA § 51-7-80 was properly dismissed by the trial court as prematurely brought before the final termination of the underlying proceedings).

most favorable to Marietta,[22] reveal with certainty that the city would not be entitled to relief under any state of provable facts asserted in support thereof as counterclaims.[23] Marietta's counterclaim pleading gave neither sufficient notice of any claim nor a general indication of the type of litigation involved that would entitle it to the types of damages it seeks — e.g., recovery of diminution in tax digest and the costs of providing public services to its residents. And we find no cognizable basis of recovery for such alleged damages. Because Marietta would not be entitled to any of the damages sought, it follows that its claim for attorney fees cannot be sustained.[24] Because the record shows that neither the city's attorney nor its mayor could have reasonably believed, as contemplated by OCGA § 9-11-11.1 (b), that the counterclaims were warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, the verifications to the contrary were false. The trial court erred by not striking the counterclaims as violative of the anti-SLAPP statute.

Marietta's arguments that the trial court properly permitted the counterclaims lack merit. Marietta claims that it did not file the counterclaims " 'solely' on the basis of [Hagemann's] action of filing a complaint, but rather the Counterclaim[s] [were] brought because [Hagemann's] lawsuit was initiated for the improper purpose of seeking to stop the redevelopment of validly rezoned property in order to obtain private benefits." It posits, "[T]he Legislature did not provide protection for [Hagemann] in filing an unfounded lawsuit which has succeeded in killing a major redevelopment project for the City of Marietta." Marietta points out that Hagemann subjected himself to the litigation process by filing the declaratory judgment

---

[22] See *DeKalb County v. State of Ga.*, 270 Ga. 776, 779 (2) (512 SE2d 284) (1999) ("When the sufficiency of a complaint is questioned by a motion to dismiss, the complaint is to be construed in the light most favorable to the plaintiff, with all doubts resolved in plaintiff's favor."); *Metzler*, supra, 248 Ga. App. at 600 (3) (whether a claim complies with the anti-SLAPP statute is decided on motion to dismiss or motion to strike, and such a motion is analogous to the statutory mechanism of OCGA § 9-11-12 (b)).

[23] See *LaSonde v. Chase Mtg. Co.*, 259 Ga. App. 772, 774 (1) (577 SE2d 822) (2003) (motion to dismiss for failure to state a claim should be sustained if the allegations of the complaint reveal, with certainty, that the plaintiff would not be entitled to relief under any state of provable facts asserted in support of the complaint); OCGA § 9-11-12 (b) (6); *Metzler*, supra; *Grant v. Fourth Nat. Bank*, 229 Ga. 855, 859 (1) (194 SE2d 913) (1972) (just as with original claim, a motion to dismiss counterclaim for failure to state claim upon which relief can be granted should not be granted unless it appears to a certainty that the defendant would not be entitled to any relief under any state of facts that could be proved); see also *Mattox v. Yellow Freight Systems*, 243 Ga. App. 894 (534 SE2d 561) (2000) (trial court's ruling on a motion to dismiss is subject to de novo review on appeal).

[24] See generally *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 529 (543 SE2d 32) (2001) (a claim for attorney fees must be based on obtaining some of the relief sought). But see footnote 19, supra, regarding motion for attorney fees under OCGA § 9-15-14.

action and argues that, therefore, the anti-SLAPP statute should not be used to shield him from its counterclaims. Marietta further points out that Hagemann has cited no case applying the anti-SLAPP statute to a counterclaim. Finally, it complains that imposing the anti-SLAPP statute to bar its counterclaims ignores that Hagemann could seek remedies under OCGA §§ 9-15-14[25] and 51-7-80 et seq.[26]

Marietta's suggestion that counterclaims fall outside the scope of the anti-SLAPP statute contradicts the plain language of the statute. It mandates verification for "*any claim* asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances."[27]

Marietta's assertion that Hagemann's lawsuit is unfounded also does not require a different result. While Hagemann's petition for a declaratory judgment may ultimately be denied on the merits, the General Assembly, as a matter of Georgia public policy, has created a condition precedent for pursing any claim arising from acts protected by the anti-SLAPP statute.[28] As stated above, Marietta failed to meet the condition precedent of presenting sufficient verification.

Finally, there is no requirement that Hagemann first seek to invoke OCGA § 9-15-14 or § 51-7-80 et seq. before seeking the protections of the anti-SLAPP statute.

2. Hagemann contends that the trial court erred by failing to award him attorney fees under the anti-SLAPP statute. If a claim is verified in violation of the anti-SLAPP statute, the court, upon motion or upon its own initiative, is authorized to grant "the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney[ ] fee."[29]

The trial court erroneously determined that the counterclaims did not violate the anti-SLAPP statute. We remand this case for the trial court to reconsider, in light of this opinion, Hagemann's request for attorney fees under that statute.

*Judgment reversed and case remanded with direction. Blackburn, P. J., and Ruffin, J., concur.*

---

[25] (concerning litigation costs and attorney fees for frivolous actions and defenses).

[26] (concerning abusive litigation).

[27] OCGA § 9-11-11.1 (b) (emphasis supplied); see also OCGA § 9-11-11.1 (c); *Gwinnett Commercial Bank v. Flake*, 151 Ga. App. 578, 579-580 (1) (260 SE2d 523) (1979) (noting that a counterclaim is defined as "a claim presented by a defendant in opposition to or deduction from the claim of the plaintiff") (punctuation omitted).

[28] *Browns Mill Dev. Co.*, supra, 247 Ga. App. at 235 (1) (c).

[29] OCGA § 9-11-11.1 (b); see *Walden v. Shelton*, 270 Ga. App. 239, 242 (606 SE2d 299) (2004).

DECIDED JULY 11, 2007 —
RECONSIDERATION DENIED JULY 31, 2007 — 

Jenkins & Olson, Peter R. Olson, for appellant.
Haynie, Litchfield & Crane, Douglas R. Haynie, Daniel W. White, Sams, Larkin & Huff, Garvis L. Sams, Jr., for appellees.