A07A2316. HAGEMANN v. BERKMAN WYNHAVEN ASSOCIATES, L.P.

(660 SE2d 449)

BERNES, Judge.

Bill Hagemann appeals from the trial court's denial of his motion for attorney fees under OCGA § 9-11-11.1 in his dispute with Berkman Wynhaven Associates, L.P. ("Wynhaven"), following Wynhaven's

voluntary dismissal of its lawsuit. For the reasons that follow, we find that the trial court abused its discretion in failing to award an appropriate sanction to Hagemann and reverse.

The facts of this case are heavily disputed by the parties. Nonetheless, it is clear that the dispute involves approximately 18.5 acres of property owned by Wynhaven and located in the City of Marietta (the "Wynhaven Property"). The Wynhaven Property is adjacent to approximately 7.5 acres of property owned by Hagemann.

In 2005, Wynhaven entered into a contract to sell the Wynhaven Property to a third party who, in turn, planned to develop the property. The third-party developer also attempted, although failed, to purchase Hagemann's property. In accordance with the terms of the sales contract, Wynhaven and the developer submitted an application to the City of Marietta to rezone the Wynhaven Property. Wynhaven alleges that, throughout the time that the rezoning application was pending, Hagemann privately met with and negotiated with the developer, successfully obtaining certain concessions and accommodations from the developer related to the planned redevelopment.

After holding several public hearings on the zoning application, which Hagemann attended and publicly opposed, the City granted the application. Following the application approval, Hagemann filed a lawsuit against the City in which he alleged procedural defects in the way that the rezoning had been accomplished (the "Hagemann Suit"). The developer successfully moved to intervene in the Hagemann Suit. The City then moved the court to amend its pleading by asserting counterclaims against Hagemann, contending that the Hagemann Suit "was initiated for the improper purpose of seeking to stop the redevelopment of validly rezoned property in order to obtain private benefits."[1] See *Hagemann v. City of Marietta*, 287 Ga. App. 1, 7 (1) (650 SE2d 363) (2007).

The trial court granted the City's motion to add the counterclaims and this Court granted interlocutory review of the order. *Hagemann*, 287 Ga. App. at 4. We struck the City's counterclaims under the anti-SLAPP statute, OCGA § 9-11-11.1 (b), holding that the City falsely verified the claims because neither the City nor its attorneys could have reasonably believed that the counterclaims

---

[1] Specifically, the City alleged that it had allocated future tax revenues and was seeking bond financing to support the redevelopment plan; that Hagemann's suit could impede the bond financing; that Hagemann's lawsuit would delay or stop the redevelopment of the Wynhaven Property; that Hagemann had stated publicly that the purpose of his lawsuit was to obtain zoning concessions from the developer; and that the Hagemann Suit constituted "an abuse of process for the sole purpose of obtaining personal and private gain." (Punctuation omitted.) *Hagemann v. City of Marietta*, 287 Ga. App. 1, 2 (650 SE2d 363) (2007).

were warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.[2] Id. at 6-7.

In February 2006, the developer requested an extension to the scheduled March 2006 closing on the Wynhaven Property, claiming that, due in part to funding considerations, it could not close the sale while the Hagemann Suit was pending. The closing was extended on several more occasions, which Wynhaven attributes to the developer's inability to settle the Hagemann Suit. Ultimately, the deal failed, due at least in part to the unresolved litigation.

In April 2006, Wynhaven filed a lawsuit against Hagemann in which it alleged that the Hagemann Suit "lack[ed] both merit and any good faith basis" and had "effectively delayed and interfered with the closing of the sale of the Wynhaven Property" between Wynhaven and the developer.[3] Wynhaven claimed that Hagemann's actions led to the postponement and ultimate termination of the sales contract between itself and the developer. Consequently, Wynhaven asserted claims against Hagemann of tortious interference with business relations; tortious interference with contractual relations; and conspiracy to tortiously interfere with business and contractual relationships and to commit fraud.

Hagemann notified Wynhaven of his belief that the lawsuit violated OCGA § 9-11-11.1, the anti-SLAPP statute, contending that Wynhaven sought damages from him solely because he asked the court to review the City's rezoning decision. In response, Wynhaven submitted affidavits in accordance with OCGA § 9-11-11.1 (b) that purported to verify that Wynhaven's claims were well-grounded; that the acts forming the basis for its claims were not privileged communications under OCGA § 51-5-7 (4); and that the claims were not interposed for any improper purpose. See OCGA § 9-11-11.1 (b).

In January 2007, Wynhaven amended its complaint to include a claim for defamation based upon "numerous [media] articles and letters written by, or containing quotes and information furnished by, Hagemann, which were, and were known by Hagemann . . . to be[ ] false, inaccurate, incomplete, and/or misleading" and which "did not concern any pending zoning or TAD application, or any other pending legislative, executive, judicial, or official proceeding, and were not

---

[2] Our holding focused specifically on the damages being sought by the City, namely the City's novel attempt to recover from Hagemann damages associated with the "diminution in tax digest and the costs of providing public services to its residents" in the event that the Hagemann Suit prevented the redevelopment. Id. at 7 (1).

[3] Specifically, Wynhaven alleged that Hagemann's conduct surrounding the planned development and his challenge to the rezoning decision was motivated in bad faith by his pecuniary interest in his own property; his failed attempt to sell his adjacent property to the developer; his animosity toward the developer and desire to prevent the developer from owning the property; and his desire to postpone the closing indefinitely for his sole benefit.

designed to redress any grievance Mr. Hagemann may have suffered." The amended complaint also purported to detail allegedly tortious conduct committed by Hagemann prior to his filing of the Hagemann Suit.

Hagemann moved to dismiss Wynhaven's lawsuit as violative of OCGA § 9-11-11.1. Prior to the trial court holding a hearing on Hagemann's motion, Wynhaven dismissed its lawsuit without prejudice.

Hagemann filed a timely motion for attorney fees and expenses in accordance with OCGA § 9-11-11.1 (f). In support of his motion, Hagemann argued that Wynhaven's lawsuit fell within the ambit of OCGA § 9-11-11.1 because it related solely to his challenge to the city's zoning decision and that Wynhaven's verifications filed in support of the complaint were false. The trial court held a hearing on Hagemann's motion, but summarily denied his request for attorney fees. This appeal followed.

The anti-SLAPP statute was adopted by our legislature in order "to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their constitutional rights of freedom of speech and the right to petition government for redress of grievances." OCGA § 9-11-11.1 (a). Its stated purpose is to prevent a "chill[ing]" of the valid exercise of these rights "through abuse of the judicial process." Id. In furtherance of this goal, the legislature requires that any claim that falls within the purview of OCGA § 9-11-11.1 be accompanied by a written verification

> certify[ing] that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.

OCGA § 9-11-11.1 (b). Upon a finding that a party has falsely verified a complaint, the statute provides that

> the court, upon motion or upon its own initiative, *shall* impose upon the persons who signed the verification, a represented party, or both an appropriate sanction which

may include dismissal of the claim and an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

(Emphasis supplied.) Id. See *Metzler v. Rowell*, 248 Ga. App. 596, 598-599 (1) (547 SE2d 311) (2001).

On appeal, Hagemann argues, as he did in the trial court, that he is entitled to the attorney fees that he has incurred as a result of this lawsuit because Wynhaven's claims violated the anti-SLAPP statute and that its verifications were false. To determine that a claim has been falsely verified, and therefore justify a sanction against the filing party, there must first be a threshold finding that the anti-SLAPP statute applies and that verification was required. *Atlanta Humane Society v. Harkins*, 278 Ga. 451, 452 (603 SE2d 289) (2004). In analyzing the breadth of conduct protected by the statute, we note that this Court has previously held that OCGA § 9-11-11.1 creates an "expansive definition" of protected speech, which includes "any state-ment made to any official proceeding authorized by law; or any statement made *in connection with an issue under consideration* by any official proceeding." (Punctuation omitted; emphasis in original.) *Metzler*, 248 Ga. App. at 598 (1). See OCGA § 9-11-11.1 (c).

If the anti-SLAPP statute applies, the next inquiry is whether the verifications were false, which requires a showing that

(a) the claimant or his attorney did not reasonably believe that the claim was well grounded in fact and that it was warranted by existing law or a good faith argument for the modification of existing law, (b) the claim was interposed for an improper purpose, or (c) the defendant's statements were privileged pursuant to OCGA § 51-5-7 (4).

*Atlanta Humane Society*, 278 Ga. at 452.

The filing of the Hagemann Suit is conduct that lies squarely within the purview of OCGA § 9-11-11.1 (b), as Hagemann was exercising his "right to petition government for a redress of griev-ance" for a rezoning decision. Although Wynhaven does not dispute this fact, it argues that the anti-SLAPP statute "does not sanitize . . . Hagemann's tortious behavior — specifically his interference with the contractual and business relationships" between Wynhaven and the developer.

A careful reading of Wynhaven's original complaint reveals, however, that the pinnacle of the "tortious behavior" about which Wynhaven complains was the filing of the Hagemann Suit. And it was the filing of the Hagemann Suit that Wynhaven claims interfered

with its contractual and business relationship with the developer. See Complaint, Par. 31 ("Although the Hagemann Suit lacks both merit and any good faith basis, it has effectively delayed and interfered with the closing of the sale of the Property from [Wynhaven] to [the developer]."). Consequently, the anti-SLAPP statute required verification of the claims in the original lawsuit. See *Hagemann*, 287 Ga. App. at 6 (1). See also *Metzler*, 248 Ga. App. at 598-599 (1).

The record further establishes that the verifications filed in support of its original complaint were false as defined in OCGA § 9-11-11.1 (b). Both a Wynhaven executive and its counsel certified that "[t]o the best of [their] knowledge, information, and belief formed after reasonable inquiry, the claims are well grounded in fact and are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Yet, this Court has previously held that, "as a matter of law, a claim for tortious interference with contractual relations cannot be predicated upon an allegedly improper filing of a lawsuit." (Citations and punctuation omitted.) *Phillips v. MacDougald*, 219 Ga. App. 152, 155 (2) (g) (464 SE2d 390) (1995). See also *Metzler*, 248 Ga. App. at 598-599 (1) (affirming the dismissal of a lawsuit by a property owner against local residents and an environmental group for tortious interference with a sales option contract, holding that "[t]he framing of [plaintiff's] claims as tortious interference with contract or business relations does not render the assertion of privilege [established by the anti-SLAPP statute] inapplicable"). Consequently, the allegations of the complaint reveal with certainty that Wynhaven would not be entitled to relief under any state of provable facts asserted in support of its claims. See *Hagemann*, 287 Ga. App. at 6 (1) ("At best, the allegations of [the City's] counterclaims imply that Hagemann's declaratory judgment action makes him liable [for abusive litigation] under [OCGA § 51-7-80 et seq.].").

Because the verifications filed in conjunction with Wynhaven's original complaint were false, we next address whether the trial court abused its discretion in failing to sanction Wynhaven. In so doing, we reiterate that our legislature unambiguously provided that,

> [i]f a claim is verified in violation of [the anti-SLAPP statute], the court, upon motion or upon its own initiative, *shall* impose upon the persons who signed the verification, a represented party, or both an appropriate sanction which may include dismissal of the claim and an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

(Emphasis supplied.) OCGA § 9-11-11.1 (b). "[I]t can scarcely be doubted that by the use of the word 'shall' a legislative mandate, and not a mere permission, was imported into the enforcement provisions of the Act at [OCGA § 9-11-11.1 (b)]." (Citation and punctuation omitted.) *State Ethics Comm. v. Long*, 223 Ga. App. 621, 626 (1) (478 SE2d 618) (1996) (holding that the Georgia Ethics in Government Act required the superior court to make an award of attorney fees in favor of the State Ethics Commission despite a finding that the defendant acted in good faith). See also *Legum v. Crouch*, 208 Ga. App. 185, 188 (3) (430 SE2d 360) (1993) ("This [C]ourt has generally held that, unless the context clearly indicates otherwise, the word 'shall' is to be read as a word of command.") (citation and punctuation omitted); *Spivey v. Mayson*, 124 Ga. App. 775, 777 (186 SE2d 154) (1971) ("The word 'shall' in a statute is a word of command, and the context ought to be very strongly persuasive before that word is softened into a mere permission.") (citation and punctuation omitted).

The terms of the anti-SLAPP statute are "plain and reasonable in consequences" and therefore must be interpreted and enforced as written. *Legum*, 208 Ga. App. at 188 (3). A sanction against a claimant must be imposed upon a finding that the complaint and verification were filed in violation of OCGA § 9-11-11.1 (b). We therefore expressly disapprove of any language in *Walden v. Shelton*, 270 Ga. App. 239, 241-244 (606 SE2d 299) (2004) that may be read to imply that, upon the finding that both a complaint and verification violate OCGA § 9-11-11.1, the imposition of a sanction lies within the discretion of the trial court.

Because Wynhaven's verifications were false as that term is defined under OCGA § 9-11-11.1, the trial court was obligated to impose, within its discretion, an appropriate sanction. Upon remand, if the trial court in the exercise of its discretion chooses to award attorney fees to Hagemann as the sanction, then it should apportion its award to the amount attributable only to the claims asserted by Wynhaven in its original complaint. In its amended complaint, Wynhaven added a defamation claim for comments allegedly made in bad faith that falls outside of the scope of the anti-SLAPP statute. Wynhaven further alleged additional tortious conduct by Hagemann that occurred prior to and entirely separate from the filing of the Hagemann Suit — conduct that likewise does not come within the anti-SLAPP statute.

We agree with the dissent's analysis of the anti-SLAPP statute that fashioning an appropriate sanction in the face of a false verification lies within the trial court's discretion. We cannot agree with the dissent's conclusion, however, that Wynhaven's voluntary dismissal of its lawsuit can somehow be viewed as a sanction. A sanction is court imposed. Compare *Meister v. Brock*, 268 Ga. App. 849, 850 (1)

(602 SE2d 867) (2004) (a voluntary dismissal "is not a judgment (or other order) rendered by a court") (citation and punctuation omitted). In contrast, a voluntary dismissal by the plaintiff pursuant to OCGA § 9-11-41 (a) (1) occurs "without order or permission of court." Moreover, Hagemann is not being deprived merely of "the psychic pleasure of having the trial court forcibly dismiss the complaint." Rather, he defended a lawsuit for nearly a year that we have concluded could not have been filed with the belief that the claims were well-founded. In such a situation, the legislature has not only mandated that a sanction be imposed, but expressly provided that a voluntary dismissal by the plaintiff does not preclude the imposition. OCGA § 9-11-11.1 (f). Finally, Wynhaven not only denies that it dismissed its complaint because it was filed in violation of the anti-SLAPP statute, but continues to assert its position that it intends to refile the lawsuit at a later date.[4] We simply cannot agree that Wynhaven's voluntary dismissal under these circumstances constituted a court imposed sanction.

*Judgment reversed and case remanded. Barnes, C. J., Andrews, P. J., Johnson, P. J., Ruffin, Miller, Ellington, Phipps and Adams, JJ., concur. Smith, P. J., concurs specially. Blackburn, P. J., and Mikell, J., dissent.*

SMITH, Presiding Judge, concurring specially.

I fully concur with the majority's conclusion that we should disapprove this court's opinion in *Walden v. Shelton*, 270 Ga. App. 239 (606 SE2d 299) (2004), because it could be read to imply that whether a sanction will be imposed lies within the discretion of the trial court. I also fully concur with the remand of this case to the trial court for the imposition of an appropriate sanction. OCGA § 9-11-11.1 (b). I write separately to emphasize that an appropriate sanction could include one or all of the following: a fine, public reprimand, litigation costs, or attorney fees.

BLACKBURN, Presiding Judge, dissenting.

I respectfully dissent. As held in *Walden v. Shelton*,[5] although OCGA § 9-11-11.1 mandates the imposition of an appropriate sanction, it allows the trial court the discretion to choose from various options in fashioning the form of that sanction. Nevertheless, disapproving *Walden*, the majority takes that discretion out of the hands of the trial court and mandates that the form of the sanction here *must*

---

[4] We further note that although the dissent states that "the trial court held a hearing on the matter and determined that under the circumstances of this case, the dismissal of the claim sufficed as a sanction," nothing in the record indicates that the trial court made such a finding.

[5] *Walden v. Shelton*, 270 Ga. App. 239, 242 (606 SE2d 299) (2004).

include the imposition of reasonable expenses. I respectfully disagree and would rule that *Walden* was rightly decided.

The majority twice quotes the pertinent language of OCGA § 9-11-11.1 (b), each time italicizing the word "shall" and notably *not* italicizing the word "may." Italicizing both words places the matter in better context:

> If a claim is verified in violation of this Code section, the court, upon motion or upon its own initiative, *shall* impose upon the persons who signed the verification, a represented party, or both an appropriate sanction which *may* include dismissal of the claim and an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

(Emphasis supplied.) OCGA § 9-11-11.1 (b). Thus, the statute is clear: where a claim is wrongfully verified, the court *shall* impose an appropriate sanction. The word "appropriate" clearly connotes that the court has discretion as to the form of this sanction. This connotation is confirmed by the statute's description of the possible forms of that sanction, which *may* include dismissal of the claim (with no reference to whether that dismissal be with or without prejudice) and *may* also include an order to pay reasonable expenses, which expenses *may* include reasonable attorney fees. The majority bypasses all the discretionary "may" and "appropriate" language and mandates instead here that the sanction *must* include an award of reasonable expenses.

I believe this approach ignores the clear intent of the plain language used in the statute, which contemplated that the trial court would exercise its discretion in fashioning an appropriate sanction. Although the statute sets forth possible forms of that sanction, it does not require that the court impose a particular form of that sanction. As stated in *Walden*, supra, 270 Ga. App. at 242:

> While OCGA § 9-11-11.1 (b) states that the trial court *shall* impose an appropriate sanction, it further states such sanction *may* include dismissal of the claim and an order to pay expenses and attorney fees. To construe the statute as mandating the award of attorney fees upon a finding that the claim was verified in violation of the Code section, renders the words, "which *may* include," meaningless. It is clear from the language of the statute, that the legislative

intent was to grant the trial court discretion, under the facts and circumstances of each case, in awarding attorney fees and expenses.

(Emphasis in original.) Cf. *Hagemann v. City of Marietta*[6] ("[i]f a claim is verified in violation of the anti-SLAPP statute, the court, upon motion or upon its own initiative, is *authorized* [not mandated] to grant 'the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney fee' ") (punctuation omitted; emphasis supplied).

Here, the trial court held a hearing on the matter and determined that under the circumstances of this case, the dismissal of the claim sufficed as a sanction. The majority and defendant Hagemann lament that the dismissal was effectuated by the plaintiff Wynhaven rather than by the court. Apparently, Hagemann feels that he was cheated of the psychic pleasure of having the trial court forcibly dismiss the complaint as opposed to observing Wynhaven capitulate to his demands for a dismissal. I do not perceive a party's psychic or pecuniary desire for a particular form of a sanction as a basis for forcing the trial court to impose attorney fees, especially in light of the trial court's decision that the dismissal itself was a sufficiently appropriate sanction (even if technically effectuated by the plaintiff's hand).

For these reasons, I respectfully dissent.

I am authorized to state that Judge Mikell joins in this dissent.

DECIDED MARCH 28, 2008.

*Jenkins & Olson, Peter R. Olson*, for appellant.

*Smith, Curry & Hancock, Philip E. Beck, Helen H. Pope*, for appellee.

---

[6] *Hagemann v. City of Marietta*, 287 Ga. App. 1, 8 (2) (650 SE2d 363) (2007).