**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 2, 2022**

# In the Court of Appeals of Georgia

A22A0469. ROSSER v. CLYATT et al.

MILLER, Presiding Judge.

This is the second appearance before this Court of this dispute between members of Grady Electric Membership Corporation ("Grady EMC") and Grady EMC's former president and general manager, Thomas A. Rosser, Sr. See *Rosser v. Clyatt*, 348 Ga. App. 40 (821 SE2d 140) (2018) (physical precedent only) ("*Rosser I*"). Rosser seeks review of the trial court's two orders awarding attorney fees to the defendants pursuant to Georgia's anti-SLAPP statute (OCGA § 9-11-11.1). On appeal, Rosser argues that the trial court erred by (1) awarding attorney fees incurred during the previous appeal in this case; and by (2) awarding the entirety of the fees that the defendants requested without considering the facts and circumstances of the case. We conclude that the anti-SLAPP statute does provide for an award of appellate

fees and that the trial court did not abuse its discretion by imposing the instant fee award, and so we affirm.

"This Court generally applies an abuse-of-discretion standard in cases involving a claim of error in the decision to award or deny attorney fees." (Citation and punctuation omitted.) *Brooks v. Hayden*, 355 Ga. App. 171, 171-172 (843 SE2d 594) (2020); see also *Hagemann v. Berkman Wynhaven Assoc.*, 290 Ga. App. 677, 682-683 (660 SE2d 449) (2008) (reviewing for abuse of discretion a claim that the trial court should have awarded attorney fees under the previous version of the anti-SLAPP statute). "Under an abuse of discretion standard of review, we are to review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." (Citation omitted.) *Brown v. Brown*, 359 Ga. App. 511, 513 (2) (a) (857 SE2d 505) (2021).

> The relevant underlying facts are set out in our prior opinion in this case:
>
> Grady EMC, like all EMCs, is a private, nonprofit, electric utility owned by the members it serves. It has the exclusive right to furnish service within its service area. Grady EMC has more than 13,000 members.
>
> In 2014, [William Gordon] Clyatt, a member of Grady EMC, began questioning some of management's decisions, including, among other

2

things, lending $468,000 to Rosser; hiring Rosser's son as president and general manager of Grady EMC to succeed Rosser; and holding tens of millions of dollars in earnings instead of returning the money to the member-owners.

In April 2014, Clyatt met with Grady EMC leadership to discuss his concerns, but he was not satisfied with their response. Clyatt purchased nine advertisements in the local newspaper, the Cairo Messenger, to publicize his concerns. Other members of Grady EMC contacted Clyatt, and ultimately a group of them, including Clyatt and defendants Ronald Sellars, Seaborn Roddenberry, and Jerome Ellis, formed a committee they called "Take Back Our Grady EMC."

In 2014, the group filed a lawsuit against Grady EMC, Rosser, his son, and other officers and directors. The parties resolved the litigation by entering a settlement agreement that, among other things, required Rosser to resign his employment and terminate any affiliation, other than as a member, with Grady EMC and its entities, and required the formation of a special committee to evaluate the claims of Take Back Our Grady EMC and advise the board. As a result, the trial court entered a consent order dismissing the case with prejudice on May 24, 2016.

Five months after the dismissal of the 2014 lawsuit, Rosser filed this action, alleging that certain statements written by Clyatt were defamatory. He sued Clyatt, Sellars, Roddenberry, Ellis, Jane and John Doe defendants, Deep South Coins and Jewelry, Inc., which is owned by Clyatt and whose Facebook page included statements about Rosser, and

3

the Messenger Publishing Company, the publisher of the local newspaper, the Cairo Messenger, which published Clyatt's and Take Back Our Grady's paid advertisements about Rosser. The defendants answered the complaint and moved to strike it under [the] anti-SLAPP statute. The trial court granted the motions to strike[.]

(Citations and punctuation omitted.) *Rosser I*, supra, 348 Ga. App. at 41-42 (1). On appeal, we affirmed the trial court's grant of the motions to strike, holding that the anti-SLAPP statute applied to Rosser's defamation claims and that the trial court was entitled to conclude that there was not a probability that Rosser would prevail on his claims. Id. at 42-53 (2)-(3).

After we decided *Rosser I*, the Messenger Publishing Company filed an amended motion for attorney fees under OCGA § 9-11-11.1 (b.1), seeking a total of $89,496.38 in attorney fees incurred during the trial court proceedings and on appeal during *Rosser I*. The remaining defendants (collectively, the "Take Back Our Grady defendants") filed a separate amended motion that also sought attorney fees under OCGA § 9-11-11.1 (b.1) in the amount of $48,801. Following a hearing, the trial court granted both motions, awarding $71,597.10 in attorney fees to the Messenger Publishing Company and awarding $9,850 in attorney fees to the Take Back Our

4

Grady defendants. In its orders, the trial court specified that it awarded fees for both the trial court proceedings and the appellate proceedings. This appeal followed.[1]

1. As an initial matter, the Messenger Publishing Company moves to dismiss this appeal to the extent Rosser challenges the Company's attorney fee award because the parties have settled that claim. We GRANT the motion to dismiss, and this appeal will only address the trial court's order granting attorney fees to the Take Back Our Grady defendants.

2. Rosser first argues that the trial court erred by awarding the attorney fees that the defendants incurred during the first appeal in this case, arguing that the anti-SLAPP statute does not allow for recovery of appellate fees. We conclude that the anti-SLAPP statute does allow an award for such fees.

When we interpret a statute, we must keep in mind the familiar canons of statutory construction, which provide that

> [a] statute draws its meaning from its text. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary

---

[1] The Take Back Our Grady defendants filed a motion for reconsideration of the trial court's order, which apparently remains pending in the trial court.

speaker of the English language would. If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end. But when the language of a statute or regulation is not obvious on its face, we should employ other tools of construction to interpret it and resolve its meaning.

(Citations and punctuation omitted.) *Premier Health Care Investments, LLC v. UHS of Anchor, LP*, 310 Ga. 32, 39 (3) (b) (849 SE2d 441) (2020).

"Generally, an award of attorney fees is not available in Georgia unless authorized by statute or contract. Thus, whether a statute that authorizes an award of attorney fees also includes an award of appellate fees depends on the language of the statute." (Citations omitted.) *Day v. Mason*, 357 Ga. App. 836, 847 (6) (851 SE2d 825) (2020). "A party can, however, recover attorney fees incurred on appeal when attorney fees in general are authorized by other statutes." *Springside Condo. Assn. Inc. v. Harpagon Co. LLC*, 298 Ga. App. 39, 40 (1) (679 SE2d 85) (2009).

Turning to the provision at issue, the anti-SLAPP statute provides that "[i]n any action subject to [the anti-SLAPP statute], a prevailing moving party on a motion to strike shall be granted the recovery of attorney's fees and expenses of litigation related to the action in an amount to be determined by the court based on the facts and circumstances of the case." OCGA § 9-11-11.1 (b.1). This provision "*requires* the

6

trial court to award [attorney] fees and expenses of litigation related to the action to a moving party (usually, the defendant) who prevails on an anti-SLAPP motion[.]" (Punctuation omitted and emphasis supplied.) *Wilkes & McHugh, P. A. v. LTC Consulting, L. P.*, 306 Ga. 252, 260 (2) (a) (830 SE2d 119) (2019).

We are compelled to conclude that the anti-SLAPP's attorney fees provision allows parties to recoup appellate fees. First, a fair reading of the statute's broad wording that fees "related to the action" shall be recoverable supports an inference that appellate fees are included in its purview. We have previously interpreted the term "action" to refer to the entire course of legal proceedings, including appellate proceedings, and we have upheld appellate fee awards under statutes that use such broad terminology. See *In re Estate of Zeigler*, 295 Ga. App. 156, 161 (2) (d) (671 SE2d 218) (2008) (holding that appellate fees are recoverable under former OCGA § 53-12-193 (a) (4), which allows a trial court to award "reasonable attorney's fees incurred by the beneficiary *in bringing an action* on the breach [of a trust.]") (emphasis supplied); *Buckler v. DeKalb County Bd. of Tax Assessors*, 288 Ga. App. 332, 333-334 (654 SE2d 184) (2007) (holding that appellate fees are recoverable under OCGA § 48-5-311 (g) (4) (B), which authorizes the recovery of attorney fees "*incurred in the [taxpayer's] action*.") (emphasis supplied); see also *Kautter v.*

*Kautter*, 286 Ga. 16, 19-20 (4) (c) (685 SE2d 266) (2009) (appellate fees are recoverable under OCGA § 19-6-2, which authorizes the recovery of attorney fees "at any time during the pendency of the litigation").

Second, contrary to Rosser's argument, the text of OCGA § 9-11-11.1 (b.1) is readily distinguishable from other attorney fee provisions that we have held do not allow for appellate fees. For instance, the Supreme Court of Georgia has held that appellate fees are not recoverable under OCGA § 13-6-11 because "[t]he elements which will authorize an award under [that statute] have consistently been found to relate to the conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself." *David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (561 SE2d 89) (2002). The text of OCGA § 9-11-11.1 (b.1), on the other hand, is clear that it applies to "attorney's fees and expenses of litigation" incurred during the course of litigating a SLAPP case. Additionally, we have concluded that appellate fees are not recoverable under attorney fee provisions that specifically reference trial court proceedings. See, e.g., *Kautter*, 286 Ga. at 19 (4) (c) (appellate fees are not recoverable under OCGA § 9-15-14 because "implicit in the language of that statute is that a court of record of this state may impose reasonable and necessary attorney fees and expenses of litigation for proceedings

8

before *that court*, which were brought for purposes of harassment or delay or lacked substantial justification.") (citation and punctuation omitted; emphasis in original); *Day*, supra, 357 Ga. App. at 846-848 (6) (concluding that appellate fees are not recoverable under OCGA § 19-9-3 (g) because that statute specifically mentions and refers to trial and pre-trial proceedings). Unlike these statutes, nothing in the language of the anti-SLAPP statute states or implies that the recovery of attorney fees is limited to those incurred in trial court litigation.

Finally, "permitting recovery of fees and costs incurred on appeal would further the purpose of the [anti-SLAPP statute]." *Evans County Bd. of Commrs. v. Claxton Enterprise*, 255 Ga. App. 656, 659 (3) (566 SE2d 399) (2002) (concluding that appellate fees are recoverable under Georgia's Open Meetings Act). As we have mentioned before, "Georgia's anti-SLAPP statute was enacted to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech." (Citation omitted.) *Lane Dermatology v. Smith*, 360 Ga. App. 370, 378 (2) (861 SE2d 196) (2021). "[T]he goal of an anti-SLAPP statute is to end a SLAPP lawsuit quickly and without much cost to the defendant[.]" *Rogers v. Dupree*, 340 Ga. App. 811, 815 (2) (799 SE2d 1) (2017). The current version of Georgia's anti-SLAPP

9

statute specifically contemplates that appellate proceedings are a key part of its protections in that the statute provides for direct appeals from any order denying or granting a motion to dismiss or strike under the anti-SLAPP statute. OCGA § 9-11-11.1 (e). "Because appeal is often an integral part of litigation to enforce the [anti-SLAPP statute], recovery of attorney fees should not exclude those incurred on appeal." *Evans*, supra, 255 Ga. App. at 659 (3).

For these reasons, the trial court correctly concluded that the anti-SLAPP statute allows for the recovery of appellate fees.

3. Rosser further argues that the trial court did not properly consider the facts and circumstances of the case when it awarded attorney fees to the defendants. Rosser primarily argues that the trial court did not consider the fact that the anti-SLAPP statute had been newly amended and that many of his legal positions were arguable and defensible. We conclude that the trial court did not abuse its discretion in awarding attorney fees to the Take Back Our Grady defendants.

The amount of attorney fees awarded under the anti-SLAPP statute is "to be determined by the court based on the facts and circumstances of the case." OCGA § 9-11-11.1 (b.1). The anti-SLAPP statute does not limit or specify precisely which "facts and circumstances" the trial court must consider, so long as they are "of the

10

case." We therefore "must presume that the General Assembly meant what it said and said what it meant," (Citation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013), and that the trial court was entitled to consider any of the "facts and circumstances of the case" and balance them accordingly in determining the amount of fees to be awarded.

In its order, the trial court stated that it considered the facts and circumstances of the case when reaching its decision and recited the procedural history of the case and the amount of filings that the parties made in support of its orders. The trial court concluded that the amount of attorney fees awarded represented a "reasonable and necessary amount for asserting the rights of [the Defendants] in this matter and for the time invested by [the Defendants'] attorneys and the tasks so performed." The trial court also stated that it considered the arguments of counsel that were presented in both the motions and at the hearing.[2] Finally, we note that the trial court did not award the entire amount of fees that the defendants requested, and so it appears that the trial court considered some circumstances that were favorable to Rosser. Therefore, Rosser has not shown that the trial court abused its discretion by failing

[2] The transcript of the hearing has not been included in the record on appeal, and thus we are unaware of what arguments were presented to the trial court at the hearing regarding the "facts and circumstances" of this case.

11

to consider "the facts and circumstances of the case" when it ruled on the motion for attorney fees.

For these reasons, we conclude that the trial court did not abuse its discretion when it awarded attorney fees to the Take Back Our Grady defendants, and we therefore affirm its order.

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur.*